## 39785. WOODRUFF v. GEORGIA STATE UNIVERSITY et al.

WELTNER, Justice.

Woodruff brought this action against the Board of Regents, Georgia State University and certain Georgia State University professors alleging state and federal constitutional violations, tort, and breach of contract claims. The trial court granted summary judgment and Woodruff appeals.

Woodruff was admitted to a master's degree program in the music department of Georgia State University in 1972. In the fall of 1973, she received an "F" on the basis of plagiarism, and appealed that grade to an appeals committee within the university. The committee changed the grade to an "incomplete." She alleges that thereafter her professors were "hostile and sarcastic" to her, refusing to help her with course work and thesis preparation, changing course requirements prior to graduation, placing damaging information about her in an open file, and giving her undeservedly low grades in an attempt to block her graduation.

In 1979, after seven years in a program which normally takes two or three years to complete, Woodruff was awarded the degree of Master of Arts in Music. She then applied for admittance into a doctoral program at the University of Georgia in Athens, which required recommendations from former professors. Woodruff's former professors either refused or ignored her request for recomendations. In their depositions, several professors testified that Woodruff was an "argumentative and troublesome" student who was erratic in her studies and not academically qualified to proceed to a doctoral program. They offered academic reasons for withholding their recommendations.

Woodruff filed suit in January 1982, alleging libel and slander, intentional infliction of mental distress, conspiracy in withholding recommendations, negligent supervision of her graduate studies, breach of contract, and constitutional violations. Prior to filing this suit, Woodruff had filed a complaint in federal court alleging similar causes of action, which was dismissed in June 1981.

The university asserts that all claims are barred by the statute of limitations. However, Woodruff relies upon a telephone conversation (surreptitiously recorded by her on magnetic tape) that she had with a professor in February 1980, in which the professor declined to give a recommendation and intimated that there was a "general consensus of opinion" among the professors to withhold recommendations. Woodruff alleges this to be part of a "continuing tort" (if in truth such a thing exists) thus tolling the statute.

We need not address this defense, as the central issue is whether

or not a dispute concerning academic decisions of a public educational institution is a justiciable controversy.

In the general realm of educational institutions, we have reviewed standards of dismissals, *Owen v. Long County Bd. of Education,* 245 Ga. 647 (266 SE2d 461) (1980), *Morman v. Bd. of Education,* 218 Ga. 48 (126 SE2d 217) (1962), *Harvey v. King,* 248 Ga. 838 (285 SE2d 707) (1982), and student discipline. *Leoles v. Landers,* 184 Ga. 580 (192 SE 218) (1937), *Samuel Benedict Memorial School v. Bradford,* 111 Ga. 801 (36 SE 920) (1900). We have examined the denial of student eligibility to participate in sports, *Smith v. Crim,* 240 Ga. 390 (240 SE2d 884) (1977), and we have refused to permit the judiciary to referee high school football games. *Ga. High School Assn. v. Waddell,* 248 Ga. 542 (285 SE2d 7) (1981). The Court of Appeals has upheld the authority of a local board of education to impose proficiency requirements as a prerequisite to graduation from high school. *Wells v. Banks,* 153 Ga. App. 581 (266 SE2d 270) (1981). School financing was considered in *Deriso v. Cooper,* 246 Ga. 540 (272 SE2d 274) (1970), and *McDaniel v. Thomas,* 248 Ga. 632 (285 SE2d 156) (1981). *Deriso v. Cooper,* supra, raised, as well, questions concerning the adequacy of school curriculum and physical facilities, "and various other matters relating to the manner in which educational services shall be provided and student progress shall be monitored." 246 Ga. at 542.

We have not thus far, however, entertained an individual student's complaint seeking money damages for alleged impropriety in academic assessment of her work.

"This court traditionally has been reluctant to embark upon courses of judicial action which would require continuing supervision of the official conduct of public officers. . . . Courts are ill-equipped to make such fundamental, legislative and administrative policy decisions as how much local supplement to teachers' salaries should be paid in order to attract qualified teachers, how many levels of English or math should be taught, whether a system of pupil ability grouping shall or shall not be used, whether buildings shall be constructed and, if so, where, and the myriad other matters involved in the everyday administration of a public school system which the courts would face were they to embark upon the course of judicial activism desired by the school patrons. *Resolutions of these discretionary policy determinations best can be made by other branches of government.*" (Emphasis supplied.) 246 Ga. at 543.

In *McDaniel v. Thomas,* supra, we declined to tell the General Assembly precisely how it must allocate state funds among school systems. In *Deriso v. Cooper,* supra, we declined to tell a local school board the manner in which it must perform its responsibilities. In *Ga.*

*High School Assn. v. Waddell,* supra, we declined to review the call of a football referee.

We now decline to review a teacher's academic assessment of a student's work.

This is clearly consistent with the authorities we have mentioned. It is restraint which stems from confidence that school authorities are able to discharge their academic duties in fairness and with competence. It is born alike of the necessity for shielding the courts from an incalculable new potential for lawsuits, testing every Latin grade and every selection for the Safety Patrol.

It protects every teacher from the cost and agony of litigation initiated by pupils and their parents who would rely upon the legal process rather than the learning process.

It protects every school system — all of them laboring under pressures of financing, personnel problems and student discipline, academic performance, taxpayer revolt and patron unrest, and a rising tide of recalls — from an added and unbearable burden of continuous legal turmoil.

Almost fifty years ago, this Court diverted from the University System of Georgia the encroaching hands of the executive and legislative branches. *State of Ga. v. Regents of the Univ. System of Ga.,* 179 Ga. 210, 218 (175 SE 567) (1934). See also Robert Preston Brooks, *The University of Georgia Under Sixteen Administrations, 1785-1955,* Athens (1956), p. 180 et seq. Absent plain necessity impelled by a deprivation of major proportion, the hand of the judicial branch alike must be withheld.

*Judgment affirmed. All the Justices concur.*

DECIDED JULY 7, 1983.

*Irwin M. Levine,* for appellant.

*Michael J. Bowers, Attorney General, Patrick W. McKee, Assistant Attorney General,* for appellees.