71284. BURKE v. EMORY UNIVERSITY et al.
(338 SE2d 500)

BIRDSONG, Presiding Judge.

Emory University and Emory University School of Dentistry et al. were granted summary judgment in this suit by William E. Burke arising out of his dismissal from the School of Dentistry for failure

and deficiency in completing clinical and scholastic requirements. Burke originally sued for breach of contract, arbitrary and capricious acts resulting in "deprivation of major proportion," and other counts not here at issue. *Held*:

The record and evidence show that Burke was dismissed from the school rolls following his junior year, after having been required to repeat his sophomore year and having in his junior year acquired 21 semester hours of conditional failure, eleven more than the level of failure required for dismissal from enrollment. In his junior year in February 1983, he was warned in writing that he had fewer than 15 total operative experience units of the 50 required, and was advised to consult his advisor for help to improve his situation; but he did not do so. That year he received a grade of 65 in oral pathology, 64 in orthodontics (these were conditional failures), 55 in clinical crown and bridge, and 55 in clinical prosthetics. (These were failing grades.) According to the school "guidelines for academic standards" approved by faculty council, conditional failure grades indicate the student is unable to perform at an acceptable level and exhibits only marginal understanding of subject content. Failing grades mean the student fails to acquire sufficient knowledge or competency in a subject. A student may be dismissed, among other options, in the faculty's discretion if he fails to attain an overall average less than 72, with no grade below 70.

Appellant Burke contends he is not asking the courts to review a qualitative decision by the academic faculty, but asserts the faculty made a quantitative error in basing its decision on a mistaken assumption that he had made a grade of 69 in pharmacology instead of 70 which was his actual grade, and that on his appeal of the faculty decision, this error was not corrected. Burke contends that this error and the failure to correct it affected the decision to dismiss him and constituted a "deprivation of major proportion" which would authorize judicial interference or review of the academic decision (*Woodruff v. Ga. State Univ.*, 251 Ga. 232, 234 (304 SE2d 697)).

Burke contends he alerted the faculty to this mistake in his letter of appeal, and the faculty failed to consider it. However, the minutes of the faculty meeting following his appeal show his appeal petition was given to each faculty member for review before the appeal meeting; the minutes of the appeal meeting (which was held three days later for the express purpose of considering Burke's appeal) show the members discussed the appeal and reviewed the sequence of correspondence between the school and Burke, and then unanimously denied the appeal. Assuming for the purpose of argument that an academic dismissal based on mistaken information would constitute a "deprivation of major proportion" (*Woodruff*, supra) which would justify judicial review of the academic decision, we yet find no factual

basis for assuming that the faculty's dismissal in this case was based on an erroneous and uncorrected fact.

Appellant's assertion that he was entitled to constitutional due process in this action by a private university is negated by the persuasive decision, based on a similar contention, in *Jansen v. Emory Univ.*, 440 FSupp. 1060 (N.D. Ga. 1977). The private university here is not "subject to the [constitutional] restraints imposed on state institutions," nor did the university bind itself to such restraints by "contract" with the student promising due process in its academic decisions. Id. p. 1062. Moreover in any case, the fact is that Burke was afforded an appeal of the faculty decision wherein he had the opportunity to correct any erroneous information underlying his dismissal, and the appeal was considered.

In *Jansen*, supra, p. 1063, the federal court noted that the " 'rule of judicial nonintervention in academic affairs is particularly appropriate in the health care field . . . because a medical school must be the judge of the qualifications of its students to be granted a degree; courts are not supposed to be learned in medicine and are not qualified to pass opinion as to the attainments of a student in medicine. 244 FSupp. at 160-61. Courts are of course no more qualified in dentistry than in medicine and should not lightly undercut "the compelling need and very strong policy consideration in favor of giving . . . school officials the widest possible latitude in the management of school affairs." [Cit.]' " *Jansen* also noted at p. 1064 that "[t]he considerations favoring such judicial restraint are at least as compelling in the context of private universities. . . ."

The Georgia Supreme Court has held that in academic decisions, "*[r]esolutions of . . . discretionary policy determinations best can be made by other branches of government*" than the courts, and in such matters "the encroaching hands" of the judicial branch will be diverted, "[a]bsent plain necessity impelled by a deprivation of major proportion." *Woodruff*, supra, pp. 233-234. We have reviewed the facts in this case solely to determine whether they indicate a deprivation of major proportion, and we find there is no such plain necessity which would authorize judicial intervention in the academic process in this case.

Accordingly, neither the trial court nor any other is warranted in interfering with or even reviewing the academic assessment of appellant's work, or his dismissal. *Woodruff*, supra, p. 234. The grant of summary judgment to Emory was correct.

*Judgment affirmed. Carley and Sognier, JJ., concur.*

DECIDED NOVEMBER 20, 1985.

*Lawrence E. Burke*, for appellant.
*J. M. Hudgins IV*, for appellees.