### A97A2077. BLAINE et al. v. SAVANNAH COUNTRY DAY SCHOOL.
(491 SE2d 446)

ELDRIDGE, Judge.

Appellant Audrea E. Blaine was a high school senior who was within days of taking her final exams prior to graduation from appellee Savannah Country Day School ("Savannah Country Day"), when she was permanently expelled for cheating in violation of the school's honor code. Since kindergarten, appellant had attended Savannah Country Day for 13 years.

On April 26, 1994, Blaine was taking a make-up math test in a study hall; the test was the identical test given to the other students on April 25, 1994.[1] Another student, who had previously taken the same test, looked at her test paper, told her that she had done a problem incorrectly, and showed her how to do the problem correctly. Even knowing that such assistance was prohibited under the honor code and was cheating, Blaine listened to the information relevant to the test results and voluntarily accepted the unauthorized assistance in order to get the correct answer to the test question. While appellant was receiving the correct answer to the test question, a staff member and Blaine's math teacher caught the students in the act of cheating. After Honor Council proceedings regarding such cheating, Blaine was permanently expelled from school; the other student received a two-day in-school suspension. Relevant to the school's determination for permanent expulsion was that in October 1993, Blaine had been found guilty of an honor code violation regarding the "intent to cheat."

Blaine's parents, Chris and Sally Blaine, also appellants, along with their daughter, brought an action for intentional infliction of emotional distress, breach of fundamental fairness and due process, and breach of contract. On March 28, 1997, the trial court granted appellee's motion for summary judgment. Appellants timely appealed on April 25, 1997. The Blaines did not pursue the claim on appeal for intentional infliction of emotional distress.

The Supreme Court of Georgia, in a similar case, *Woodruff v. Ga. State Univ.*, 251 Ga. 232, 234 (304 SE2d 697) (1983), held, "We now decline to review a teacher's academic assessment of a student's work. This is clearly consistent with the authorities we have mentioned. It is restraint which stems from confidence that school authorities are able to discharge their academic duties in fairness and with competence. It is born alike of the necessity for shielding the courts from an incalculable new potential for lawsuits, testing

---

[1] Blaine missed the original math test on April 25, 1994, due to a school-sponsored golf tournament; April 26 was the make-up test date for her.

every Latin grade and every selection for the Safety Patrol. It protects every teacher from the cost and agony of litigation initiated by pupils and their parents who would rely upon the legal process rather than the learning process. It protects every school system — all of them laboring under pressures of financing, personnel problems and student discipline, academic performance, taxpayer revolt and patron unrest, and a rising tide of recalls — from an added and unbearable burden of continuous legal turmoil. . . . Absent plain necessity impelled by a deprivation of major proportion, the hand of the judicial branch alike must be withheld." See *McDaniel v. Thomas*, 248 Ga. 632 (285 SE2d 156) (1981); *Ga. High School Assn. v. Waddell*, 248 Ga. 542 (285 SE2d 7) (1981); *Deriso v. Cooper*, 246 Ga. 540 (272 SE2d 274) (1980).

What the late Chief Justice Weltner held in such opinion in 1983 regarding denial of admission into a university's doctoral program is even more apt when applied to the violation of an honor code in a private preparatory school by a student caught cheating. First, the student is there voluntarily, by mutual agreement, governed by the standards for grades, for deportment, and for conduct, which standards are established and enforced by the scholastic institution in order to foster scholastic achievement and preparation for further advanced education; thus, cheating is a fundamental breach of trust by the *student*. Second, cheating is both fraud and deceit, because the act of cheating represents that the scholastic work is the intellectual work product of the student and no other, when such is not the case. Third, in a community of scholars, cheating gives a false academic standing which debases the value of the degree conferred, because the recipient did not earn the degree, and such person's lack of moral and intellectual fitness and preparedness reflects negatively on the value of the degrees and diplomas awarded to others, undermining the achievement earned through difficult and sustained study by other students, and cheating deprives another student wrongfully of the class scholastic ranking held by the cheater. Fourth, in an academic community, truth and intellectual honesty are fundamental to foster learning, communication of ideas, and formation of values, as well as develop a community of experience through a shared learning effort. Fifth, self-discipline, self-reliance, and development of character are essential to the education of a person seeking higher education; cheating demonstrates a lack of self-discipline and an antisocial philosophy whereby the "ends justify the means" and demonstrates that such individual is not bound by the laws and restrictions which govern the lives of fellow students and where the student refuses to take responsibility for his or her acts or omissions in not being prepared. Sixth, in an academic community, each individual will be judged upon his or her individual merit, which merit is deter-

mined by individual effort and achievement, measured by how well innate intelligence is applied and life experiences are advantageously utilized; cheating, therefore, is a total rejection of such value system of earned merit.

Appellants' two enumerations of error raise but one assertion: the trial court erred in granting summary judgment. We do not agree.

The first enumerated error logically to be dealt with is breach of contract. In consideration of the educational opportunities provided by appellee, this student and her parents contracted with Savannah Country Day to impliedly do four things essential to the school-student relationship: (1) to diligently seek to learn and perform as a good student and to earn grades as a result of personal academic merit; (2) to be honest and responsible, i.e., not lie or cheat in the educational endeavor of learning together with the school staff and other students; (3) to maintain reasonable discipline and self-discipline in the academic setting; and (4) to pay fees, tuition, and expenses. All four conditions of continued acceptance in the school are fundamental to the consideration mandated from appellants. Failure to render any one at any time was such fundamental breach of the contract as to constitute a total failure of consideration, resulting in termination of the student's relationship with the school. Breach of any condition by a student has an adverse effect upon the other students and the continued function of the school as a self-governing and self-supporting scholastic community. Cheating fundamentally breaches the student's duty to diligently study and learn through her own work as a good student and the duty to exercise discipline, as well as self-discipline; it is a violation of the honor code in order to avoid the discovery of lack of work or of the failure to learn; this is a fundamental denial of accountability for one's actions. Cheating is the "unpardonable sin" of academia, because it is intellectual dishonesty, failure to share the academic value system of scholastic merit, a lie as to represented truth, and implication that the academic communications of such person must always be suspect. This lack of trust destroys the relationship between student and staff, as well as between students, so that the student should be removed from the academic community for the good of the school and the other students.

In this case, Blaine had been found by the Honor Council to have attempted to cheat previously that school year, and Blaine's success in cheating had been prevented only by the fortuitous absence of any material on the test covered by the discovered "cheat sheet." At the time of such Honor Council action and subsequently, Blaine never denied the attempt to cheat nor sought to contest the Honor Council finding but accepted the punishment, until after her subsequent per-

manent expulsion. Now Blaine seeks to say that she was found by the Honor Council to "intend to cheat" not "attempt to cheat." The trial court found correctly the intent to cheat and attempt to cheat were the same; when a person has the intent to commit a prohibited act and undertakes through any overt act to carry out a prohibited act, such overt act of taking into the test the calculator with the prohibited information usable for cheating, such overt act and intent constitutes an attempt to cheat. This second infraction was even more blatant. The Honor Council and appellee acted on the reasonable belief that Blaine was in fact guilty of two Honor Code violations.

We agree that there was a total failure of consideration and breach of contract; however, the breach of contract was on the part of appellants. See *Life Chiropractic College v. Fuchs*, 176 Ga. App. 606, 607-608 (1) (337 SE2d 45) (1985); see also *Burke v. Emory Univ.*, 177 Ga. App. 30 (338 SE2d 500) (1985).

Appellants also contend that the trial court erred in granting summary judgment as to their assertion of appellee's violation of "fundamental fairness."

In their complaint and before this Court the Blaines admit that there had been cheating in April 1994 and that Blaine had been found guilty by the Honor Council of an honor code violation in October 1993. In fact, with regard to the 1994 incident, the Blaines do not contend that the Honor Council procedures and findings were a violation of fairness. They challenge the sanction. The Blaines contend in regard to the first honor code violation that the notes were left in the calculator in October by mistake and that she had no "intent to cheat," so that the prior finding by the Honor Council of "intent to cheat" created a factual dispute as to the first Honor Council violation and that the punishment for the clear second violation was arbitrary and capricious, because there really was not a proper first violation upon which to impose the aggravated sanction of expulsion on the second violation. This ignores the discretion to expel for a single act of cheating, the April 26 act of cheating.

The Blaines ignore the point that Blaine had her second chance when she was allowed to remain in school after being found guilty on the first offense, whether it was a factually correct determination or not; Blaine was on notice that appellee legitimately believed her guilty of an October 1993 honor code violation and she had to act accordingly. Blaine accepted the first punishment, either because it was correct or because it was to her advantage to do so, and did not seek any timely appeal or review within the school of such finding. In short, her inaction, silence, and conduct waived or estopped her subsequent contest of her first finding of guilty on the first honor code violation. In other words, regardless of whether Blaine was innocent or guilty of the first offense, once she was found guilty, she had a

heightened duty to avoid even the appearance of an honor code violation, and rightly so, because all her subsequent conduct had to be closely scrutinized by staff or students. Blaine earned a reputation for not being as trustworthy or reliable as one who earns, by her own work, academic merit; adheres voluntarily to the value system of the honor code; and possesses self-discipline to do her own work. Thus, a blatant act of cheating, involving another student, demonstrates appellant's total inability to adhere to the standards of the academic community and demonstrates the danger that she might have a negative effect on other students.

The action of expulsion, under the facts and circumstances of this case, was not arbitrary or capricious, but a reasonable exercise of administrative and academic discretion, based upon the reasonable belief at the time of the second offense and the silence of Blaine as to the first offense that she had committed two honor code violations; where the exercise of discretion is to be judged, it is judged not by hindsight but the knowledge of the moment of decision. There was no violation of fundamental fairness in the treatment of Blaine. See *Woodruff v. Ga. State Univ.*, supra at 234; *Life Chiropractic College v. Fuchs*, supra at 607-608; *Widen v. Atlanta Hosp. &c.*, 194 Ga. App. 890, 891 (392 SE2d 60) (1990); see also *Jansen v. Emory Univ.*, 440 FSupp. 1060, 1062 (N.D. Ga. 1977). Therefore, the trial court did not err in granting summary judgment.

*Judgment affirmed. Ruffin, J., and Senior Appellate Judge Harold R. Banke concur.*

DECIDED AUGUST 22, 1997 —

*Savage & Turner, Brent J. Savage*, for appellants.
*Hunter, Maclean, Exley & Dunn, John M. Tatum, Michael D. Robl*, for appellee.