LYON COLLEGE *v.* Melissa GRAY

CA 99-99                                              999 S.W.2d 213

Court of Appeals of Arkansas
Division II
Opinion delivered September 29, 1999

*Hughes & Luce, L.L.P.*, by: *Jim Hunter Birch*, for appellant.

*Robert M. Abney, P.A.*, for appellee.

JUDITH ROGERS, Judge. This appeal is brought from a jury verdict awarding appellee Melissa Gray $20,644 on her breach of contract claim against appellant Lyon College. In 1995, while appellee was a student at Lyon, she was accused by the college's Honor Council of using improper information to prepare for a physics test. The council found her guilty, and her conviction was upheld on appeal to the president of the college. As a result, she was suspended from school for the remainder of the 1995–1996 academic year, given an "F" in her physics course, and given a "W" in her other courses. In 1996, she filed suit against the college, which resulted in the aforementioned jury verdict. Appellant contends on appeal that the trial court should have granted a directed verdict in its favor. We agree and reverse and dismiss the case.

Appellant is a private Presbyterian-affiliated college located in Batesville. In 1995, it employed an Honor System which was set out in the student handbook. The system consisted of an Honor Code, an Honor Pledge, and the procedures for administering and enforcing the system. The Honor Code provided, among other things, that "we understand honor to include . . . a commitment to abstain from all forms of cheating and plagiarism." In the Honor Pledge, students promised, among other things, to abstain from all fraud in academic work. The administering body of the system was the Honor Council, composed of twelve students. The council's duties included investigation of reports of possible Honor Code violations, conducting trials of those charged with

violations, and imposing a penalty if an accused were found guilty. An accused was provided with written notice of an allegation of a code violation; written notification of actual charges; a student adviser as an assistant and advocate; a closed, recorded hearing; the opportunity to present witnesses at the hearing and to cross-examine other witnesses; and the right to appeal the council's decision to the president of the college.

On October 18, 1995, appellee was notified by the Honor Council that an investigation had begun "surrounding the possibility of an honor violation in your Physics class." Ten days later, she was informed that a trial would be conducted and that she was being charged with using "inappropriate information in preparation for the test administered on October 9 & 10." The dates referred to corresponded with a test given by physics professor Dr. John Sample. Dr. Sample gave his students the option of taking the exam, which was the second of the year, on either day. Appellee took the test on October 10 and scored 100. In her prior exam, she had scored a 29, with a 21 on the corresponding take-home test.

In studying for her October 10 exam, appellee looked at a copy of one of Professor Sample's exams from the previous year. As it turned out, the October 10 test and the previous year's test were identical. Within days after the test was taken, the Honor Council began an investigation. Although use of the old test did not, in and of itself, constitute a code violation, the council explored the possibility that certain students had procured a copy of the old test after having received information that it and the current year's test were the same.

During appellee's trial before the Honor Council, she admitted that she had studied from the old exam. However, she denied any prior knowledge of the content of the test she took on October 10. Her testimony was contradicted by her roommate and sorority sister, Julie Roach. Roach testified that, on the evening of October 9, appellee informed her that the old test and the upcoming test were going to be the same. Roach saw appellee and appellee's boyfriend, Lynn Monroe, working through the problems on the old test. Further, she testified that, when she told

appellee that having prior knowledge about the next day's test was probably cheating, appellee replied that she did not care, that her grades were low in physics, and that she could not afford not to study from the old test.

After the trial, the Council found appellee guilty of a code violation and imposed sanctions. Appellee immediately appealed the decision to John Griffith, President of the college. In her letter to him, she stated that she had always maintained her innocence in the case and that the trial had come down to "the accuser's word against my own." Griffith reviewed the evidence before the council and some additional evidence, including Dr. Sample's grade sheet which reflected that, on the corresponding take-home portion of the October 10 exam, appellee had scored a 51. Following his review, Griffith upheld the sanctions imposed by the council. Appellee withdrew from school, whereupon she lost approximately $15,000 in financial aid, the receipt of which had been dependent upon her academic performance. She subsequently enrolled at UA-Fayetteville.

On May 13, 1996, appellee filed the lawsuit that is the subject of this case. She alleged that the Honor System contained in her student handbook constituted a contract between herself and the college and that the college, by its unwarranted suspension of her, breached the contract. At trial, appellee testified, as she had before the Honor Council, that she was innocent of any misconduct. Upon being cross-examined, she admitted that the college had followed its procedures in its investigation and conduct of the trial. Further, she acknowledged that the Council had been presented with two different versions of what happened on the evening of October 9 — hers and Julie Roach's — and that the Council was "pretty much" faced with the decision of which of them was telling the truth. Additionally, she admitted that it would constitute an Honor Code violation if a person studied for a test by using knowledge obtained from someone else regarding the content of the test. Appellee's testimony regarding her lack of culpability was corroborated by Lynn Monroe (who was also convicted of a code violation). However, John Griffith testified that he had not found appellee's story believable.

At the close of appellee's case, appellant moved for a directed verdict, *inter alia*, on the grounds that, because the college had fully complied with its Honor System procedures and had based its decision on the credibility of the witnesses, the court system should not interfere with the college's decision. The trial judge took the matter under advisement and directed appellant to proceed with its case. At the close of all evidence, appellant renewed its motion for a directed verdict. The trial judge reserved a ruling, but submitted the case to the jury. The jury returned with a general verdict in favor of appellee. Appellant filed a motion for a judgment notwithstanding the verdict based upon its earlier directed-verdict arguments. The court did not act on the motion, and it was deemed denied after thirty days. This appeal followed.

■ A directed verdict is a challenge to the sufficiency of the evidence. *Sparks Regional Medical Ctr. v. Smith*, 63 Ark. App. 131, 976 S.W.2d 396 (1998). On appeal, we view the evidence in a light most favorable to the appellee. *Id.*

■ ■ Virtually all courts recognize that an educational institution, particularly a private one, must be given some discretion in the administration of its disciplinary proceedings. *Slaughter v. Brigham Young Univ.*, 514 F.2d 622 (10th Cir.), *cert. denied*, 423 U.S. 898 (1975); *Clayton v. Trustees of Princeton Univ.*, 608 F. Supp. 413 (D.N.J. 1985); *Blaine v. Savannah County Day School*, 228 Ga. App. 224, 491 S.E.2d 446 (1997); *Napolitano v. Trustees of Princeton Univ.*, 186 N.J. Super. 548, 453 A.2d 263 (1982). *See also*, Annot., *Breach-School Dismissal*, 47 A.L.R.5th 1 (1997). Likewise, in Arkansas, we are reluctant to allow the judiciary to encroach upon the disciplinary proceedings of an educational institution. In *Henderson State Univ. v. Spadoni*, 41 Ark. App. 33, 848 S.W.2d 951 (1993), this court recognized that there is a general policy against interference by the courts in matters best left to school authorities. In *Smith v. Denton*, 320 Ark. 253, 895 S.W.2d 550 (1995), our supreme court stated that "[t]he avenue for judicial review of the substance of academic decisions is narrow" and that a court "has no power to interfere in the exercise of a state-regulated university's discretion in the promulgation and implementation of disciplinary measures unless it is shown by clear and convincing evidence that the university abused its discretion."

Abuse of discretion may occur if the university fails to follow its own procedural guidelines or if its disciplinary decision is not based upon substantial evidence. *Slaughter v. Brigham Young Univ., supra; Napolitano v. Trustees of Princeton Univ., supra.*

■ ■ Because we have no allegations of a procedural due process violation in this case, the circuit court review should have been confined to whether appellant's decision to sanction appellee was supported by substantial evidence. The evidence before the Honor Council, by appellee's own admission, was conflicting and a matter of a credibility determination. Despite appellee's testimony that she was innocent of any wrongdoing, Julie Roach provided evidence that appellee had prior knowledge of the content of the October 10 test. If the Council believed Miss Roach's testimony, as it apparently did, then it had substantial evidence to find appellee guilty of an Honor Code violation. Evidence in conflict presents a question of fact to be decided by the university's disciplinary committee. *Henderson State Univ. v. Spadoni, supra.*

■ Based upon the forgoing, we hold that a directed verdict should have been granted in favor of appellant. Even when the facts are viewed in a light most favorable to appellee, there was no clear and convincing evidence of an abuse of discretion by appellant. Once it was shown that appellant followed its own procedural guidelines and based its disciplinary decision on substantial evidence, judicial review of appellant's actions should have ceased, and the case should not have gone to the jury. The jury's verdict is therefore reversed and dismissed. Consequently, appellee's attorney fee award is also reversed and dismissed.

MEADS and ROAF, JJ., agree.