71149. LIFE CHIROPRACTIC COLLEGE, INC. v. FUCHS.
(337 SE2d 45)

BANKE, Chief Judge.

The appellee, a former student at Life Chiropractic College, Inc., was suspended from that institution for allegedly falsifying four grade-change forms. He was, however, given the right to apply for readmission at the end of three academic quarters. Without making such application, he brought the present action to recover actual and punitive damages from the college based on breach of contract, tortious interference with contractual rights, fraud, intentional infliction of emotional distress, slander, and unjust enrichment. We granted the college's application for interlocutory appeal from the denial of its motion for summary judgment.

The appellee had been a student at the college for approximately 10 academic quarters at the time of his suspension. During that period, the college had a procedure whereby an instructor could change a grade given to a student by completing and signing a change form and forwarding it to the registrar's office. In May of 1980, four such

forms were submitted to the registrar's office purporting to change grades previously given to the appellee, in each instance a failing or incomplete grade being changed to the equivalent of an "A." Upon investigation, it was determined by the college that none of these forms had in fact been signed by the instructor whose purported signature appeared thereon.

A meeting of the "Student Judiciary Committee" was subsequently convened to deal with the matter. At this meeting, each of the four instructors in question appeared and denied having signed the form purporting to bear his or her signature. In addition, an employee of the registrar's office testified that the appellee had delivered one of the completed grade-change forms to her personally. Although the appellee was not allowed either to be present when these witnesses testified or to cross-examine them, he was allowed to address the committee and to offer such explanation as he desired, at which time he simply denied having had anything to do with the forms. At the conclusion of the hearing, the committee voted to recommend that the appellee be permanently dismissed from the college; however, as previously indicated, the college instead suspended him with the right to apply for readmission at the end of three quarters.

In opposition to the college's motion for summary judgment, the appellee relied on testimony by one of the four instructors whose signatures had been forged on the grade-change forms to the effect that he (the instructor) had been pressured by the academic dean of the college into giving the appellee a failing grade in a course in which the appellee had actually earned a passing grade. The instructor maintained that when he had asked the dean for an explanation, the dean had responded, "Well, you know of course [the appellee] is a homosexual." The instructor further maintained that some of his previous statements in the case had been made under duress, in the form of implied threats of dismissal from his job; however, he did not disavow his previous testimony that he had not signed the grade-change form purporting to bear his signature. *Held*:

1. The appellee's breach of contract claim is based on the proposition that the college bulletin or catalogue created an implied promise by the school to reward each student who paid the required tuition and fees and completed the prescribed courses with both an education and a degree in the field of chiropractic care. There is, however, an express provision in the bulletin to the effect that suspension or expulsion may result from student misconduct such as lying, cheating, or stealing; and the appellee does not take the position that falsifying a grade-change form would constitute insufficient ground for expulsion under this provision. He instead contends that, by failing to allow him to confront the witnesses who testified at the judiciary committee hearing, the college violated another provision in the bulle-

tin specifying that "[d]ue process is followed in all [disciplinary] cases."

Being a private institution, the college was not, of course, constitutionally required to provide the appellee with the full panoply of due process protections which would be applicable at a state-sponsored educational institution. See generally *Goss v. Lopez*, 419 U. S. 565 (95 SC 729, 42 LE2d 725) (1975); *Dixon v. Ala. Bd. of Education*, 294 F2d 150 (5th Cir. 1961). Moreover, it has been held that a provision in a private university bulletin to the effect that no student shall be dismissed without "due process" does not contractually obligate the institution to provide the full range of constitutional due-process protections enjoyed by students at tax-supported institutions, but only those procedures specifically provided for in the bulletin itself. See *Jansen v. Emory Univ.*, 440 FSupp. 1060 (N.D. Ga. 1977), aff'd 579 F2d 45 (5th Cir. 1978). The bulletin published by the college in this case did not guarantee the right of confrontation of adverse witnesses during proceedings before the student judiciary committee. Therefore, our inquiry with respect to the appellee's breach of contract claim will be limited to whether the college may be deemed to have violated his due process rights in the general sense of subjecting him to arbitrary or capricious treatment at the hearing. Cf. *Mahavongsanan v. Hall*, 529 F2d 448 (5th Cir. 1976); *Jansen v. Emory Univ.*, supra, 1062-1063.

As previously indicated, the only witnesses, other than the appellee, who testified at the judiciary committee hearing were the four instructors, who simply denied having signed the grade-change forms, and the clerical employee from the registrar's office, who testified that the appellee had personally delivered at least one of the forms to her. The hearing was recorded, and a reasonably complete transcript of the proceedings was prepared and included in the record. The appellee has not suggested what additional testimony he might have been able to elicit had he been allowed to cross-examine these witnesses, nor has he demonstrated how he was harmed by not being allowed to confront them. Since he has deposed two of these witnesses and, presumably, has had the opportunity to depose the remainder of them during the pendency of the present action, this must be viewed as a rather substantial omission.

The record before us establishes solid evidentiary support for the college's conclusion that the appellee attempted to falsify his grades. Consequently, absent a showing of harm resulting from the college's failure to allow him to confront the witnesses who testified against him at the hearing, there is no basis for a finding that the suspension was imposed in an arbitrary or capricious manner. We accordingly hold that the college was entitled to summary judgment with respect to the breach of contract claim.

2. A cause of action for intentional interference with contractual rights must be based on "[t]he intentional and non-privileged interference by a third party with existing contractual rights and relations . . . . (Cits.)" *McDaniel v. Green*, 156 Ga. App. 549, 550 (275 SE2d 124) (1980). No such third-party interference is even alleged in this case. Consequently, the college would be entitled to summary judgment on this count of the complaint even if a jury issue existed with respect to the breach of contract claim.

3. The appellee's fraud claim is based on an allegation that the college induced him to enroll as a student by falsely representing, via the bulletin, that he would be allowed to complete his education, whereas in actuality it never intended to allow him to do so. The appellee has presented no evidence whatsoever to support this rather far-fetched allegation. Rather, the record establishes without dispute that the appellee was suspended on the basis of events which transpired after he had been enrolled for 10 quarters. Furthermore, since the appellee was expressly afforded the right to apply for readmission at the end of three academic quarters after his suspension, it cannot even be said definitively that the college has refused to allow him to complete his education. We accordingly hold that the college was also entitled to summary judgment on this count of the complaint.

4. There has been no allegation of any conduct by the college which can be considered so humiliating, terrifying, or insulting as to give rise to a cause of action for intentional infliction of emotional distress. See generally *Ga. Power Co. v. Johnson*, 155 Ga. App. 862, 863 (2) (274 SE2d 17) (1980), and cases cited therein. Accordingly, the college was also entitled to summary judgment on this count of the complaint.

5. The count of the complaint seeking recovery for slander is based on evidence that, during the course of the judiciary hearing, one of the committee members referred to the appellee as a "pathological liar." However, assuming that this statement was slanderous, the college could not be held liable for it absent evidence that the speaker was expressly authorized or directed by the college to make it. See *Cochran v. Sears, Roebuck & Co.*, 72 Ga. App. 458 (1) (34 SE2d 296) (1945); *White v. Cudahy Co.*, 130 Ga. App. 64 (1) (202 SE2d 233) (1973). The academic dean and executive vice-president of the college averred in his affidavit that no such authorization or direction was given to the speaker by the college, and there is no evidence of record to refute this averment. It follows that the college was also entitled to summary judgment with respect to this count of the complaint.

6. Finally, we hold that the college was entitled to summary judgment with respect to the claim for money had and received. In this count of the complaint, the appellee sought the return of his past tui-

tion payments based on unjust enrichment. Since it is clear that the payments in question were for the period prior to the suspension, and since there is no question that the appellee received in return for these payments the benefit of the classroom facilities, equipment, and faculty provided by the college, there exists no basis for a finding that the college was unjustly enriched. See generally *J. C. Penney Co. v. West*, 140 Ga. App. 110 (2) (230 SE2d 66) (1976).

7. For the above reasons, the appellant's motion for summary judgment should have been granted in its entirety.

*Judgment reversed. McMurray, P. J., and Benham, J., concur.*

DECIDED OCTOBER 15, 1985 —
REHEARING DENIED OCTOBER 29, 1985 —

*Donald F. Walton, Therese S. Barnes*, for appellant.
*Walter W. Furlong*, for appellee.

