## A05A1737. MOREHOUSE COLLEGE, INC. v. McGAHA.
(627 SE2d 39)

RUFFIN, Chief Judge.

After Antonio McGaha was expelled from Morehouse College, a jury awarded him $698,500 in damages on a breach of contract claim based on Morehouse's failure to follow proper procedure. The trial court denied Morehouse's motion for a new trial, and Morehouse appeals, arguing that: (1) the trial court erred in allowing testimony on future lost wages, a measure of damages not recoverable in a contract action; (2) the verdict is excessive; and (3) the trial court erred in allowing McGaha to introduce irrelevant evidence about disputed credit hours on his transcript, which prejudiced the jury against Morehouse. For reasons that follow, we affirm in part and reverse in part.

The evidence, viewed in a light most favorable to the verdict,[1] shows that McGaha became a student at Morehouse in the fall of 1997. He paid his tuition with student loans. During his freshman year, McGaha applied to participate in an exchange program called "Biosphere 2," which took place in Arizona and was sponsored by Columbia University. He was accepted and began the semester-long program in September 1998.

Dr. Anne Watts served as the liaison between Morehouse and the Biosphere 2 program. McGaha understood from her that Morehouse would send his financial aid check to him in Arizona, he would take

---

[1] See *Williams v. Terry*, 197 Ga. App. 209, 210 (4) (398 SE2d 239) (1990).

the check to the comptroller of the Biosphere 2 program, and his expenses would be deducted from the check. In fact, McGaha received a check from Morehouse made payable to the Biosphere 2 program for $8,905.52. He took the check to the Biosphere 2 comptroller's office. The comptroller's office returned approximately $7,000 to him. McGaha did not find this unusual, as Morehouse had refunded approximately $4,000 to him in previous semesters and because he had applied for a scholarship with the Biosphere 2 program. Thus, McGaha used the $7,000 to repay loans he had previously received.

McGaha successfully completed the Biosphere 2 program and returned to Morehouse in February 1999. In April 2000, during McGaha's junior year, he received a notice from the Biosphere 2 program that it owed him $15.55. However, McGaha subsequently discovered that Columbia University contended he owed it money. In late April 2000, Morehouse sent two letters dated April 20, 2000, to McGaha's home. One letter directed McGaha to appear before the school's Honor and Conduct Review Board on May 3, while the other informed McGaha that he had been expelled and must vacate the campus in 48 hours. The letter directing him to appear before the review board stated that he had "defrauded Columbia University of a tuition payment for the Biosphere 2 Center" by receiving the $7,050.20 reimbursement from the check Morehouse sent for his tuition. This was McGaha's first notice that there was a problem related to his Biosphere tuition.

Morehouse's student handbook provides that a student is entitled to an informal hearing upon misconduct charges being brought, and then to a formal hearing before a review board if the matter is not resolved informally. The purpose of an informal hearing is to explain to the student both the charges against him and his rights. The handbook also assures students of a fundamentally fair hearing and states that they are presumed innocent until proven guilty.

McGaha was not given an informal hearing. He attended a formal hearing on May 3, 2000. Dr. David Cook chaired the meeting. He did not explain to McGaha who had filed a complaint against him, what the process would be, or what the burden of proof was. Watts was the only witness against McGaha. She met privately with Cook and Phyllis Bentley, another board member, prior to the formal hearing.

McGaha tried to present evidence on his own behalf, but the board members interrupted him, laughed and joked, and walked around the room. When McGaha tried to show a document to Bentley, she threw it back at him and said she did not want to see it. McGaha asked Watts why she had not tried to contact him or his parents to let them know there was a problem. Her answer was that she did not know. The hearing was taped, and the tape was played for the jury.

Cook testified at trial that when a student comes before the review board at a formal hearing, he assumes the student must have done something wrong. He admitted that this could conflict with the presumption of innocence required by the student handbook. Cook also stated that the board is not responsible for protecting the rights of students.

The board expelled McGaha, and he was unable to take his final exams for the semester. He filed an appeal on May 4, 2000, and the appeal committee was scheduled to meet on May 9. McGaha's appeal was denied in a letter dated May 10; however, the letter was post-marked May 6 and he received it on May 8.

After McGaha filed suit against Morehouse, the college reduced his expulsion to a suspension for one semester. McGaha subsequently learned that Morehouse had removed thirty-two credits (approximately two semesters) from his transcript, which would have reduced his class standing had he returned to Morehouse. Morehouse never explained to McGaha why the credits were removed from his transcript. McGaha did not return to Morehouse or any other college. At the time of trial, he was working as a teacher's assistant and also as a cashier at Wal-Mart.

McGaha's expert witness, economist Suzanne Gilbert, testified about McGaha's economic loss resulting from Morehouse's actions. According to Gilbert, in a best case scenario, if McGaha returned to school to complete his degree, his loss from Morehouse's actions would be $103,377. This figure included lost income based on an estimate of what he would be earning if he already had a degree, additional tuition, and legal fees. Gilbert testified that if McGaha did not finish college, which was statistically likely for someone his age who had been out of school for more than six months, then he would lose a million dollars in earnings over the course of his lifetime. In her opinion, the present value of the million dollars at that time was $524,000. The jury found in McGaha's favor, and he was awarded $698,500 in damages.

1. Morehouse argues that the trial court should not have permitted testimony about future lost wages because they are not recoverable as damages in a breach of contract action for expulsion from a school. In order to reach this issue, we first must decide what constitutes appropriate damages for a breach of contract claim such as this.

Georgia law permits an expelled student to bring a breach of contract action against a private educational institution.[2] Generally, damages for breach of contract "are such as arise naturally and

---

[2] See *Life Chiropractic College v. Fuchs*, 176 Ga. App. 606, 607-608 (1) (337 SE2d 45) (1985).

according to the usual course of things from such breach and such as the parties contemplated, when the contract was made, as the probable result of its breach."[3] We have held that the appropriate measure of damages is

> the amount which will compensate the injured person for a loss which a fulfillment of the contract would have prevented or the breach of it entailed. That is, the injured person is, so far as it is possible to do so by a monetary award, to be placed in the position he would have been if the contract had been fully performed.[4]

A person injured by a breach of contract "is bound to lessen the damages as far as is practicable by the use of ordinary care and diligence."[5]

Here, the breach of contract was Morehouse's failure to abide by the hearing procedures in its student handbook, which resulted in McGaha's expulsion. Because of Morehouse's breach, McGaha was not able to complete college on schedule. Thus, he is entitled to a monetary award that would place him in the position he would have been in if he had been allowed to continue at Morehouse. While there is no Georgia law directly addressing whether future lost wages might be included in an award for expulsion from school, our courts have dealt with a similar issue in the employment context. We have held that an employee with an employment contract for a certain term may recover future lost wages if discharged, but must take other employment to mitigate damages.[6]

Other jurisdictions have addressed this issue and reached a similar result. In Florida, a medical student was expelled two months before receiving his degree. The Florida court held that the student "must be afforded the opportunity to plead and prove damages in the form of the loss of earning capacity that would reasonably have resulted had he received [a degree]."[7] However, in that case, there was evidence that the student might not have been able to obtain his degree elsewhere due to the timing of his dismissal.[8] The Florida court recognized that the student would be required to mitigate his

---

[3] OCGA § 13-6-2.

[4] *Accent Walls, Inc. v. Parker*, 162 Ga. App. 633 (1) (292 SE2d 509) (1982).

[5] OCGA § 13-6-5.

[6] See *Gram Corp. v. Wilkinson*, 210 Ga. App. 680, 682 (3) (437 SE2d 341) (1993).

[7] *Sharick v. Southeastern Univ. of the Health Sciences*, 780 S2d 136, 140 (Fla. Ct. App. 2000).

[8] See id.

damages by obtaining his degree at another school if possible.[9] In that instance, "the appropriate measure of damages would only be the reproduction cost of acquiring the degree elsewhere. This would include a calculation of the present value of his lost income during the time period needed to acquire the degree."[10]

A federal appeals court, applying Rhode Island law, upheld an award to a dismissed student of the cost of completing her degree at another school and lost wages for the extra year it took to do so.[11] And a Louisiana court awarded a wrongfully dismissed student who completed her studies elsewhere the tuition she had paid the defendant school as well as lost wages attributable to the delay in working in her field of study.[12]

There was no evidence presented in this case that McGaha could not return to school, at Morehouse or elsewhere, and obtain a degree. No indication of his expulsion or suspension appears on his transcript. And to the extent McGaha demonstrated that credits were removed from his transcript, this evidence relates to the length of time required to complete his degree, not to his ability to return to school. Because McGaha is obligated to mitigate his damages by returning to school and obtaining a degree, and no evidence was presented that he is unable to do so,[13] it appears that McGaha cannot recover lost wages beyond the time necessary for him to complete his degree.[14] Thus, the proper measure of McGaha's future lost wages is his lost income for the additional time necessary to complete his degree due to Morehouse's actions.[15] Because McGaha was unable to take his final exams for the Spring 2000 semester, and thus received no credits for classes he paid for, he may be entitled to a refund of that semester's tuition, as well.[16]

---

[9] See id. at 141.

[10] Id.

[11] See *Russell v. Salve Regina College*, 890 F2d 484, 489-490 (IV) (1st Cir. 1989), rev'd on other grounds, *Salve Regina College v. Russell*, 499 U. S. 225 (111 SC 1217, 113 LE2d 190) (1991), damages reinstated on remand, *Russell v. Salve Regina College*, 938 F2d 315 (1st Cir. 1991).

[12] See *Fussell v. Louisiana Business College of Monroe*, 519 S2d 384, 388 (La. Ct. App. 1988).

[13] McGaha's expert testified that it was statistically unlikely that a person his age who had been out of school for more than six months would return and complete his degree. McGaha, however, gave no specific reason why he could not return to school, other than the expense.

[14] Morehouse agreed to readmit McGaha for the Spring 2001 semester. If McGaha had returned to school at that time, he would have missed one year of school. There was no testimony at trial as to how long it would have taken McGaha to receive his degree at another school.

[15] See *Russell*, supra at 489-490 (IV) (wrongfully discharged student who was required to repeat a year at new school was entitled to damages of a year's salary, as student "lost a year of her professional life").

[16] See *Fussell*, supra at 388 (student who completed four months of program but received

While courts in other jurisdictions have included in a student's damages the cost to complete the degree elsewhere, we do not believe this is required to place McGaha in the position he would have been in had the contract been fully performed, as McGaha would have had to pay tuition even if his time at Morehouse had been uninterrupted. McGaha would be entitled to compensation for tuition at another school only to the extent Morehouse's actions, such as removing credit hours from his transcript, required him to repeat courses he had already completed.

Because McGaha's damages could include future lost wages for the additional period of time needed to receive his degree, expert testimony as to future lost wages was permissible.[17] However, to the extent the expert's testimony did not fall within the parameters set forth herein, it was irrelevant and should have been excluded.[18] We thus find that the trial court erred in admitting testimony as to future lost wages beyond the time necessary for McGaha to complete his degree.

2. Morehouse contends that the jury's verdict was excessive and should have been overturned by the trial court. The trial court may overturn a jury verdict if the damages awarded "are clearly so . . . excessive as to be inconsistent with the preponderance of the evidence in the case."[19] We will not interfere with the trial court's approval of a verdict unless it is so flagrantly excessive, in light of the evidence, as to show bias, prejudice, or gross mistake by the jury.[20] In view of our holding in Division 1, we find the jury's verdict was the result of a mistake and must be reversed.

In this case, there was evidence that McGaha could mitigate his damages by returning to school. Accordingly, the jury was authorized to find that, with respect to his breach of contract claim, the most McGaha was entitled to recover was lost wages for the additional time needed to obtain a degree, the cost of tuition if required to repeat classes he had already completed, and a refund of his Spring 2000 tuition payment to Morehouse. McGaha's expert testified that if he returned to school after trial, his lost income, additional tuition, and attorney fees would be $103,377. The verdict of $698,500 so greatly exceeds McGaha's possible damages that it can only reflect a gross

---

no academic credits entitled to return of tuition).

[17] See id.; *Rhone v. Bolden*, 270 Ga. App. 712, 724-725 (13) (608 SE2d 22) (2004).

[18] See *Flint v. Dept. of Transp.*, 223 Ga. App. 815, 817-818 (1) (479 SE2d 160) (1996) (trial court properly excluded expert testimony which was not relevant to proper measure of damages).

[19] OCGA § 51-12-12 (a).

[20] See *Dept. of Human Resources v. Johnson*, 264 Ga. App. 730, 737-738 (592 SE2d 124) (2003).

mistake by the jury.[21] Therefore, we reverse the trial court's judgment and remand the case for retrial on the issue of damages.[22]

3. Finally, Morehouse argues that the trial court erred in denying its motion in limine and allowing McGaha to introduce evidence that Morehouse had removed credit hours from his transcript. Morehouse claims that this evidence was irrelevant, as any changes to McGaha's transcript occurred after the disciplinary proceeding at issue, and served only to prejudice the jury against Morehouse.

We will not overturn a trial court's determination of relevance absent an abuse of discretion.[23] Two transcripts, one reflecting fifty-four credit hours and the other reflecting eighty-six, were introduced at trial. The transcript from March 2000 shows McGaha with 86 hours earned (including 16 from the Biosphere) and 16 hours in progress for the spring semester. The transcript from December 2002 has only fifty-four hours; it is missing twenty-two hours McGaha earned the spring semester of 1999 and ten hours McGaha earned the fall semester of 1999. These hours were clearly shown as earned on the 2000 transcript. There was a sufficient basis for the trial court to find this evidence relevant to McGaha's claim for damages, as he might recover the cost of tuition for classes he was forced to repeat due to Morehouse's actions. Thus, the trial court did not abuse its discretion in allowing testimony related to changes in McGaha's transcript.[24]

*Judgment affirmed in part, reversed in part and case remanded for new trial on damages. Johnson, P. J., and Barnes, J., concur.*

DECIDED DECEMBER 6, 2005 —
RECONSIDERATION DENIED FEBRUARY 9, 2006 — ▮▮▮▮▮▮

*Hawkins & Parnell, Charles Beans, Monica F. Patterson, Michael J. Goldman,* for appellant.

*Devlin & Robinson, Marvin A. Devlin, Earnest Redwine, Rebecca C. Smith, James E. Dearing, Jr.,* for appellee.

---

[21] See *City of Atlanta v. Landmark Environmental Indus.,* 272 Ga. App. 732, 740 (4) (613 SE2d 131) (2005).

[22] See id.

[23] See *Energy Contractors v. Ga. Metal &c.,* 186 Ga. App. 475, 476 (1) (367 SE2d 324) (1988).

[24] See *Presswood v. Welsh,* 271 Ga. App. 459, 461 (3) (610 SE2d 113) (2005) ("[W]hen disputed evidence is admissible for any reason, a trial court does not abuse its discretion in . . . admitting it.").

*McKenna, Long & Aldridge, Jeremy T. Berry, C. Randall Nuckolls*, amici curiae.