## A08A0837. KURITZKY v. EMORY UNIVERSITY et al.

(669 SE2d 179)

ANDREWS, Judge.

Kevin Kuritzky appeals from the trial court's order granting defendants' motion for summary judgment on Kuritzky's claims for damages after he was expelled from the Emory University School of Medicine. For the following reasons, we conclude there was no error and affirm.

This case arose after Emory expelled Kuritzky during his fourth year of medical school. Kuritzky claimed that his expulsion was the direct result of his criticism of the care provided by Emory employees at Grady Hospital and at the VA Medical Center. He alleged that Emory had a long-standing pattern and practice of retaliating against whistle blowers and that his expulsion was part of that pattern and practice.

Kuritzky sued Emory University, William Ely, the associate dean of the medical school, and Thomas Lawley, the dean of the medical school. The counts pending at the time of the motion for summary judgment were breach of contract and assault and battery against the university, and intentional infliction of emotional distress against all defendants.

1. In his first enumeration of error, Kuritzky argues that the trial court erred in granting summary judgment to Emory on his claim for breach of contract. Specifically, Kuritzky claims that Emory failed to follow the disciplinary procedures set forth in the student handbook.

Georgia law permits an expelled student to bring a breach of contract action against a private educational institution for failure to abide by the hearing procedures set forth in the student handbook. *Morehouse College v. McGaha*, 277 Ga. App. 529 (627 SE2d 39) (2005). The elements for a breach of contract claim in Georgia are the (1) breach and the (2) resultant damages (3) to the party who has the right to complain about the contract being broken. *Odem v. Pace Academy*, 235 Ga. App. 648, 654 (510 SE2d 326) (1998). The Supreme Court has held that the breach must be more than de minimus and substantial compliance with the terms of the contract is all that the law requires. See *Dennard v. Freeport Minerals Co.*, 250 Ga. 330, 332 (297 SE2d 222) (1982) ("[o]ur general rule with respect to compliance with contract terms is not strict compliance, but substantial compliance").

Kuritzky was referred to the Conduct Code Committee on three charges of dishonesty and to the Honor Council on a charge of plagiarism. After Kuritzky's first hearing before the Conduct Code Committee, there were concerns about some of the procedures followed; therefore, according to Dean Ely, it was decided that in the interest of fairness they should "restart the process."

With regard to the second Conduct Code hearing, Kuritzky claims the committee failed to give him the opportunity to review the reports of unprofessionalism against him. The record shows, however, that Kuritzky was given this information before the first hearing. The first hearing was a nullity. Accordingly, Kuritzky had the opportunity to review the reports of unprofessionalism well in advance of the second hearing.

Next, Kuritzky points out that the handbook requires that an investigator be appointed to determine if the report has merit. As Kuritzky acknowledges, an investigator was appointed. Kuritzky claims, however, that the investigator did not talk to him; but as Kuritzky also admitted, this was not a requirement of the handbook.

Kuritzky contends that the committee considered matters beyond the three original charges. He does not state what these issues were or point out where this is forbidden by the handbook.

Next, Kuritzky points to a letter from a classmate that was submitted to the committee. He states that this letter had nothing to do with the charges against him. As Kuritzky acknowledges, the committee decided not to hear the classmate's testimony and also decided not to consider the letter.

Kuritzky also states that the Conduct Code Committee denied his request to have the hearing transcribed. There is no requirement that the hearing be transcribed.

With regard to the Honor Council hearing on the plagiarism charge, Kuritzky lists numerous instances in which he claims the University did not follow the proper procedure. He claims that the University failed to follow the student handbook by not notifying him of the investigation before it began, and by not notifying him in writing of the time, date and place of the hearing; the nature of the violation; the evidence from the investigation, including the names of the individuals making the initial allegations; and the options available to him concerning the assistance of an advisor.

The record shows that a faculty member of the Honor Council repeatedly tried to talk with Kuritzky about the Honor Council proceedings and sent him a letter notifying him of the investigation and attaching a list of faculty advisors that Kuritzky could call for consultation. A week before the hearing, Kuritzky was sent a letter informing him of the charges, the professor who brought the charges, the option of selecting someone from the School of Medicine community as his advisor, and the time, date and place of the hearing.

Kuritzky points out that the University violated the rule requiring that a hearing take place no more than 21 days after the accusation was reported to the Honor Council. Kuritzky fails to note that this is not an absolute requirement and the handbook allows for, "[i]n rare instances, a different time period may be determined by the Honor Council based upon the specific circumstances of the case." The acting chairman of the Honor Council testified that this was found to be a rare instance because of the "multiple requests to cancel hearings from the accused and his attorney."

Kuritzky also claims he was denied an opportunity to speak with the professor about the plagiarism charge. As Kuritzky acknowledges, however, there is no rule in the handbook that requires the professor to discuss this with him.

The trial court, in a thorough and well-reasoned order, held that the University, in its decision to expel Kuritzky, followed all applicable handbook guidelines. We agree. See, e.g., *Life Chiropractic College v. Fuchs*, 176 Ga. App. 606, 608 (337 SE2d 45) (1985) (college entitled to summary judgment on breach of contract claim because there was no showing that due process rights guaranteed by handbook were violated); *Jansen v. Emory Univ.*, 440 FSupp. 1060, 1062 (N.D. Ga. 1977) (granting Emory's motion on expelled dental student's breach of contract claim and holding that "educational contracts have unique qualities and are to be construed in a manner which leaves the school sufficient discretion to properly exercise its educational responsibility") (punctuation omitted). Compare *More-*

*house College*, supra at 529 (Morehouse failed to conduct required informal hearing, did not explain who had filed the complaint, what the process would be, or what the burden of proof was; moreover, the board refused to listen to student's evidence or accept documentary evidence from him).

2. Kuritzky also claims the trial court erred in granting summary judgment to Emory on his assault and battery claim. This claim arose after a fellow student — Sameer Satija, the acting chairman of the Honor Council — searched Kuritzky prior to the hearing. The council had refused Kuritzky's request to record the hearing and the chairman was told to make sure that Kuritzky did not bring any recording devices into the room. Kuritzky claims that Satija touched him on the buttocks and crotch during the search.

First, Kuritzky has not stated a claim for assault. A person commits the offense of simple assault when he "either [a]ttempts to commit a violent injury to the person of another" or "[c]ommits an act which places another in reasonable apprehension of immediately receiving a violent injury." OCGA § 16-5-20. Kuritzky makes no claim that he received or apprehended a violent injury.

He does allege, however, a claim for battery in that Satija's search of him was arguably of an insulting nature.[1] But Kuritzky can point to no evidence that this search was done at the behest of anyone associated with the University.

Because Kuritzky brought this claim against the University, he must show that the University either expressly or impliedly authorized Satija to act for it in searching Kuritzky and that this act was within the scope of this agency relationship between Satija and the University. See OCGA § 10-6-1; *Stewart v. Storch*, 274 Ga. App. 242, 245 (617 SE2d 218) (2005).

Kuritzky's only evidence of an agency relationship is his statement that when he asked Satija who told him to do this, Satija pointed to the left of the closed door. Kuritzky said that Amy Adelman, Emory's associate general counsel, was "down the hallway and to the left."

There was undisputed evidence from Satija, however, that Adelman never told him to search Kuritzky but only to make sure that Kuritzky did not record the hearing. Kuritzky verified this, stating that Satija told him that he was instructed "to make sure that you are not recording this hearing."

---

[1] OCGA § 16-5-23: "(a) A person commits the offense of simple battery when he or she either: (1) Intentionally makes physical contact of an insulting or provoking nature with the person of another; or (2) Intentionally causes physical harm to another."

Adelman stated that she never told Satija to search Kuritzky and the search by Satija was outside his scope of authority as a member of the Honor Council. Kuritzky has come forward with no evidence to dispute this. Accordingly, the trial court did not err in granting summary judgment to Emory on this claim.[2]

3. Next, Kuritzky contends that the trial court erred in granting summary judgment to defendants on his claim for intentional infliction of emotional distress. In support of this claim, he points to his allegations that Emory retaliated against him for his criticisms of conditions at Grady Hospital and the VA Medical Center, to the unlawful assault and battery prior to the Honor Council hearing, and to Dr. Felner's statement at the Conduct Code hearing that he believed Kuritzky's claim of depression was "just an act."

To make out a claim of intentional infliction of emotional distress, Kuritzky must establish all four of the following: "(1) The conduct must be intentional or reckless; (2) The conduct must be extreme and outrageous; (3) There must be a causal connection between the wrongful conduct and the emotional distress; [and] (4) The emotional distress must be severe." (Punctuation omitted.) *Hendrix v. Phillips*, 207 Ga. App. 394, 395 (1) (428 SE2d 91) (1993). "Whether a claim rises to the requisite level of outrageousness and egregiousness to sustain a claim for intentional infliction of emotional distress is a question of law." (Punctuation omitted.) *Odem*, supra at 654. "Actionable conduct does not include insults, threats, indignities, annoyances, petty oppressions, or other vicissitudes of daily living but must go beyond all reasonable bounds of decency so as to be regarded as atrocious and utterly intolerable in a civilized community." *Cook v. Covington Credit of Ga.*, 290 Ga. App. 825, 828 (660 SE2d 855) (2008).

First, the record shows that the medical school had identified problems with Kuritzky before he expressed any criticisms of Grady Hospital or the VA Medical Center. Kuritzky's first e-mail expressing concern about conditions at Grady Hospital was dated May 20, 2004. His first complaint about the VA Medical Center was June 19, 2004.

Emory has documented numerous problems with Kuritzky prior to these dates. For instance, there were complaints as early as November 2000 from Kuritzky's lab partner that he was not showing up for lab work. In May 2001, the Progress and Promotions

---

[2] In its order, the trial court found that the pat-down was insufficiently intrusive to sustain a claim for assault and battery. Although we have analyzed the claim differently on appeal, a decision right for any reason will be affirmed. See, e.g., *Gilbert v. City of Jackson*, 287 Ga. App. 326, 327 (651 SE2d 461) (2007) ("A grant of summary judgment must be affirmed if right for any reason, whether stated or unstated. It is the grant itself that is to be reviewed for error, and not the analysis employed.") (citation and punctuation omitted).

Committee noted that Kuritzky had an "incomplete" grade, problems with attendance, and psychological problems. Kuritzky withdrew during the fall of 2001 because of "poor academic performance" and "personal issues." There was also concern after Kuritzky performed a pelvic exam on a female patient without a physician present.

In January 2003, course directors were instructed to pay close attention to Kuritzky's performance and professional behavior. By December 2003, Dr. Felner, the associate dean for clinical education, testified that he was no longer believing anything Kuritzky told him. In December 2003, the Progress and Promotions Committee identified Kuritzky as having problems. The May 4, 2004 minutes of the Progress and Promotions Committee noted that Kuritzky had "difficulties at Grady" and urged Kuritzky's clerkship directors to document any further issues. The Committee decided to turn the matter over to the Conduct Committee for further investigation. Also at that meeting, Dr. Ely instructed other deans and course instructors to provide in writing any other issues of professionalism that they may have had with Kuritzky.

Accordingly, in light of the above, Kuritzky cannot show that his expulsion was due solely to retaliatory motives of the University and the two individual defendants, nor does his contention that his expulsion was retaliatory support a claim for intentional infliction of emotional distress. See *Odem*, supra at 654 (where defendant had authority under the contract to act, plaintiff's argument that the act was retaliatory will not support a claim for intentional infliction of emotional distress). Compare *Yarbray v. Southern Bell Tel. &c. Co.*, 261 Ga. 703, 706 (409 SE2d 835) (1991) (the fact that Southern Bell deliberately set out to retaliate against and to punish plaintiff for testifying against her employer, thus causing her severe emotional pain, would, if proved, be sufficient to subject the company to damages).

Kuritzky also contends that Dr. Felner's statement at the Conduct Committee hearing that he believed Kuritzky's depression was "just an act" supports this claim. But Kuritzky testified at his deposition that Dr. Felner had already told him in conversations prior to the hearing that he did not believe Kuritzky was being honest about his claims of depression. Therefore, it cannot have been unexpected or shocking that Felner would make this statement to the committee. Moreover, although this observation may have been insulting and hurtful, it cannot be regarded as "atrocious" or "utterly intolerable" and thus does not support a claim for intentional infliction of emotional distress.

As to Kuritzky's argument that the alleged assault and battery supports this claim, we have already concluded that this cannot be

attributed to any of the defendants. Therefore, for the reasons discussed above, the trial court did not err in granting summary judgment to defendants on the claim for intentional infliction of emotional distress.

*Judgment affirmed. Ruffin, P. J., and Bernes, J., concur.*

DECIDED OCTOBER 17, 2008 —
RECONSIDERATION DENIED NOVEMBER 5, 2008 —

*Orr & Edwards, W. Fred Orr II, James G. Edwards II*, for appellant.

*Freeman, Mathis & Gary, Benton J. Mathis, Jr., Mary A. Ackourey, Robert P. Marcovitch*, for appellees.