A11A1519. WELLONS, INC. v. LANGBOARD, INC.

(726 SE2d 673)

BLACKWELL, Judge.

Wellons, Inc. and Langboard, Inc. entered into two contracts in which Wellons agreed to design and install a custom energy system for a Langboard facility in Quitman. A Brooks County jury found that Wellons breached both contracts, and it awarded more than $8.4 million to Langboard as damages. Wellons appeals from the judgment entered upon the verdict of the jury, claiming that the trial court erred in three respects. First, Wellons contends that Langboard failed to bring its claim for breach of the design contract soon enough and that the trial court should have awarded summary judgment to Wellons on that claim. Second, Wellons argues that the evidence cannot sustain the award of damages for breach of the installation contract and that the trial court should have entered judgment for Wellons on the installation contract claim or, at the least, should have granted Wellons a new trial on that claim. Finally, Wellons contends that the trial court erred when it admitted certain evidence that is, Wellons says, speculative and irrelevant. We find no merit in these claims of error, and we affirm the judgment below.

1. We first consider the contention that Wellons was entitled to summary judgment on the claim for breach of the design contract because Langboard failed to assert that claim soon enough. The design contract requires that any claim for its breach be brought "within one year after the cause of action occurs . . . ." Before trial, Wellons moved for summary judgment on the design contract, arguing that Langboard waited more than a year after its claim accrued to file its complaint. Wellons explained in the trial court that the claim for breach of the design contract accrued at least by March 2006, when Langboard inquired of Wellons about replacing a superheater in the system, an inquiry that demonstrates, Wellons said, an awareness of the problems with the system. The trial court denied the motion for summary judgment, and the case proceeded to trial.

We have some doubt about whether we properly can undertake to review the denial of the motion for summary judgment. As a general rule, "[a]fter verdict and judgment, it is too late to review a judgment denying a summary judgment, for that judgment becomes moot when the court reviews the evidence upon the trial of the case." *Kicklighter v. Woodward*, 267 Ga. 157, 162 (4) (476 SE2d 248) (1996) (citation and punctuation omitted). Our Court has recognized a limited exception to this rule in cases in which "the legal issues raised and resolved in denying the motion for summary judgment were not considered at trial," *Smith v. Saulsbury*, 286 Ga. App. 322, 323 (1) (a) (649 SE2d 344) (2007) (punctuation omitted), and Wellons argues

that this is such a case. But we note that Wellons repeatedly sought at trial to elicit testimony about the time that elapsed after Langboard discovered problems with the custom energy system, Wellons argued to the jury that Langboard failed to promptly address these problems, and the court charged the jury that "the limitation period . . . begins to run at the time of the defendant's last successful repair attempt," an instruction to which Wellons did not object. Nevertheless, Langboard seems to concede that the limitation issue was not raised at trial, and for that reason, we will assume that we properly can consider the question of summary judgment, notwithstanding our doubts.

The standard for summary judgment is familiar and settled. "Summary judgment is warranted when any material fact is undisputed, as shown by the pleadings and record evidence, and this fact entitles the moving party to judgment as a matter of law." *Strength v. Lovett*, 311 Ga. App. 35, 39 (2) (714 SE2d 723) (2011). "So, to prevail on a motion for summary judgment, the moving party must show that there is no genuine dispute as to a specific material fact and that this specific fact is enough, regardless of any other facts in the case, to entitle the moving party to judgment as a matter of law." Id. We review the denial of a motion for summary judgment de novo, *Higginbotham v. Knight*, 312 Ga. App. 525, 526 (719 SE2d 1) (2011), and we view the evidence in the same way as the trial court, that is, in the light most favorable to the nonmoving party. *Saiia Constr. v. Terracon Consultants*, 310 Ga. App. 713, 713 (714 SE2d 3) (2011).

So viewed, the record shows that Wellons and Langboard entered into the design contract in October 2002. Pursuant to this contract, Langboard was to pay $13.7 million to Wellons, and Wellons was to design a custom energy system for the Langboard oriented strand board plant in Quitman. The parties agreed that the system would be designed to fulfill three essential purposes. First, the system would generate heat energy sufficient to power the production of oriented strand board. Second, the system would return any exhaust generated in the production process to the furnaces, where any pollutants would be incinerated, so that Langboard would not have to pay for additional pollution control equipment. Finally, the system would produce excess heat sufficient to power a boiler and turbine, which, in turn, would generate electricity that Langboard could use or sell. Wellons undertook to design the custom energy system, and in October 2003, Wellons and Langboard entered into a second contract, which provided for the installation of the system at the Quitman plant.

By June 2005, the system installation was far enough along that Langboard was able to operate the parts of the system designed to

power the production of oriented strand board and to incinerate pollutants. But Langboard presented evidence that, from the time it first began to operate the system, the system was unable to meet applicable emissions requirements. And when the portion of the system designed to produce electricity was finally activated in October 2005, Langboard found that it did not produce enough steam to generate electricity as the design contract required.

For several months thereafter, Wellons attempted to repair the system to bring it into compliance with the emissions requirements and to increase its production of steam. By November 2006, the emissions were "under control," but the system remained unable to produce the required steam. In December 2006, a Wellons engineer spent five days at the Quitman plant to test the capacity of the system following additional repairs. The engineer concluded that he needed additional data to determine what modifications might enable the system to produce the necessary steam. At least through January 2007, Wellons employees remained at the facility, testing the system and attempting to determine why it was not producing steam sufficient to run the turbine and generate electricity. And as late as May 2007, Wellons continued to suggest modifications of the system, including the replacement of a superheater. Wellons apparently thought that, although a new superheater would not increase the amount of steam produced by the boiler, it would increase the thermal energy of the steam that was being produced and thereby improve the performance of the system. In May 2007, Langboard informed Wellons that it was not interested in a replacement superheater because it would not, Langboard had concluded in the meantime, solve the problem of inadequate steam production.[1] Langboard filed its complaint against Wellons in October 2007.

On appeal, Langboard argues that the system was substantially complete at least by October 2005, when Langboard attempted to use the system to generate electricity, relying on our decision in *Smith v. Hilltop Pools & Spas, Inc.*, 306 Ga. App. 881 (703 SE2d 424) (2010). In *Hilltop Pools*, we said that a claim for breach of a construction contract ordinarily accrues "when construction was sufficiently completed . . . so that the owner could occupy the project for the use for which it was intended," explaining that any defects in the construction usually are ascertainable by that time. 306 Ga. App. at 883 (1). Assuming that the principle of substantial completion applies to a

---

[1] Langboard presented evidence that, by the time Wellons offered to replace the superheater, "it had become obvious" to Langboard that the system was not large enough to produce the amount of steam necessary to produce electricity and that changes to the superheater would be "kind of like rearranging the deck chairs on the Titanic."

design contract, as opposed to an installation or construction contract, there was evidence in this case, of course, that the system never produced steam sufficient to generate the electricity for which Langboard had contracted, an essential purpose of the system design. Moreover, there was evidence that Wellons continued to modify its design of the system long after October 2005. For these reasons, whether the system was substantially complete by October 2005 might well have involved genuine issues of disputed fact, which are, of course, not to be resolved on summary judgment and instead present questions for a jury.

But in any event, the theory of substantial completion that Wellons now presses on appeal and the facts on which that theory is based are not the same as the theory and facts that Wellons raised in its motion for summary judgment below. In the trial court, Wellons pointed to March 2006 as the date by which a claim for breach of the design contract had accrued, and its arguments below seem to have been more about the actual discovery of defects in the design than about the date of substantial completion. Langboard argues that Wellons waived its argument about "substantial completion" by failing to raise that theory, and the facts that would support it, on its motion for summary judgment in the court below. We agree.[2]

Appellate courts do not consider whether summary judgment should have been granted for a reason not raised below because, if they did, it "would be contrary to the line of cases holding [that a party] must stand or fall upon the position taken in the trial court." *Pfeiffer v. Ga. Dept. of Transp.*, 275 Ga. 827, 829 (2) (573 SE2d 389) (2002) (citation and punctuation omitted). It seems clear to us that Wellons did not, in fact, argue below that the design contract claim accrued upon substantial completion or that substantial completion occurred in October 2005. We are unwilling to say that the trial court erred when it failed to consider, in the context of a motion for summary judgment, a legal theory that no lawyer articulated and facts to which no lawyer pointed. For these reasons, we see no error in the denial of the motion for summary judgment.[3] See, e.g., *Assn.*

---

[2] Wellons failed to include a transcript of the hearing on its motion for summary judgment in the record on appeal. But Wellons does not contend that it made any arguments about substantial completion at that hearing, and our review of the motion itself convinces us that Wellons never asked the court below to consider when the system was substantially completed.

[3] In a footnote of its brief on appeal, Wellons says that, "[t]o the extent the Court allows Langboard's recovery under the [design contract], it must be offset by the retainage owed by Langboard to Wellons . . . ." This apparently refers to a counterclaim asserted below, in which Wellons alleged that Langboard improperly withheld funds owed to Wellons as retainage under the design contract. But the jury did not award Wellons anything on its counterclaim, and Wellons says nothing in its enumeration of errors about the judgment in favor of Langboard on

*Svcs., Inc. v. Smith*, 249 Ga. App. 629, 632 (1) (549 SE2d 454) (2001) ("[B]ecause ASI did not raise this argument in its motion for summary judgment, it is deemed waived.").

2. We next consider the contention that the evidence adduced at trial does not sustain a finding that Wellons breached the installation contract, much less a finding that any such breach caused Langboard to sustain $5 million in damages, the approximate amount that the jury awarded to Langboard on its installation contract claim.[4] In short, Wellons claims that the evidence shows that any problems with the system were a result of its design, not its installation, and Wellons argues that, even if there were installation problems, the damages attributable to any installation problems are far less than the amount awarded by the jury. For these reasons, Wellons contends, it was entitled to a judgment notwithstanding the verdict or, at the least, a new trial on the installation contract claim. When we review the denial of a motion for new trial or judgment notwithstanding the verdict, we must affirm the denial if there is any evidence to support the verdict. See *First Southern Bank v. C & F Svcs.*, 290 Ga. App. 304, 306 (2) (659 SE2d 707) (2008). We find such evidence in this case.

The jury awarded $5,015,764 to Langboard on its claim for breach of the installation contract. Langboard presented evidence at trial of several elements of damage that were a result, the jury properly could have found, of improper installation. For instance, the jury heard evidence that Wellons installed carbon steel nuts in a portion of the energy system in which its design called for alloy materials and that the carbon steel nuts disintegrated when exposed to extremely high temperatures. The jury also heard evidence that Wellons misaligned the expansion joints in the primary air heater of the system, that this misalignment caused the system to leak thermal energy, and that the misalignment created enough force to shear bolts off the system, which, in turn, exacerbated the leakage of thermal energy. The evidence shows that the cost of repairing the nuts and bolts was approximately $140,000, and the cost of repairing the expansion joints was approximately $825,000. Evidence also was

the counterclaim. Consequently, we do not consider whether the award of damages for breach of the design contract should be reduced by the amount of any retainage. See *Felix v. State*, 271 Ga. 534, 539, n. 6 (523 SE2d 1) (1999) ("an appealing party may not use its brief to expand its enumeration of errors by arguing the incorrectness of a trial court ruling not mentioned in the enumeration of the errors") (citation omitted).

[4] In response to this contention, Langboard argues, among other things, that the installation contract contains specifications for the performance of the system that are more stringent than those in the design contract and independently enforceable. In addressing this contention, we do not rely upon this argument and decline to find that the installation contract, in fact, contains such additional performance specifications.

presented at trial from which a jury could have found that the leakage of thermal energy prevented the system from achieving a consistent level of heat, which, in turn, put additional thermal stress upon the system. And the additional thermal stress, a jury might properly have found, likely contributed to other problems that the system experienced, including the failure of tube sheets. Langboard presented evidence that put the cost of replacing the cracked tube sheets between $3 million and $4 million. The range of damages proved by this evidence alone is nearly enough to justify the award of approximately $5 million for breach of the installation contract.

There also is evidence of some other elements of damage, including that the installation contract required that acceptance "shall be achieved no later than August 2004[,]" but Langboard was not able to begin operating even the portion of the system designed to power the production of oriented strand board until June 2005. From that evidence, a jury might have found some damage for delay. Moreover, a jury properly could have found from the evidence that the leakage of thermal energy was never fully remedied, that this problem imposed additional, ongoing maintenance costs upon Langboard, and more importantly, that this problem contributed to the inability of the system to produce the amount of steam required to generate electricity. We cannot determine precisely how the jury calculated the damages that it awarded to Langboard for breach of the installation contract, but "[o]ur role is not to enter the jury box. The jury made its award in its enlightened conscience and based upon the evidence presented. Thus, as the trial court declined to disturb the jury's verdict, we likewise decline to find error." *Turner Broadcasting System v. McDavid*, 303 Ga. App. 593, 612 (4) (693 SE2d 873) (2010) (citation and punctuation omitted). The damages awarded were within the range, we think, that the evidence authorized, and for that reason, we affirm the denial of the motion for judgment notwithstanding the verdict or for a new trial.

3. Finally, we consider the contention that the trial court erred when it admitted evidence that is, Wellons says, speculative and irrelevant. "Whether to admit evidence is a matter resting in the trial court's sound discretion," *Boring v. State*, 289 Ga. 429, 433 (2) (711 SE2d 634) (2011), and we will reverse a decision to admit evidence only upon a showing that this discretion was abused. *Morrison v. Morrison*, 282 Ga. 866, 867 (2) (655 SE2d 571) (2008). We see no abuse of discretion here.

(a) First, Wellons complains that the evidence of the cost to repair the failed tube sheets was speculative. At trial, a lay witness, who has worked in the wood products industry since 1973 and runs a company that designs, constructs, and operates combustion energy systems,

put this cost between $3 million and $4 million. This witness had been hired by Langboard to conduct inspections of its custom energy system, and his company made recommendations to Langboard about how it might repair the system. Wellons objected that the testimony of the witness about the cost of repairing the tube sheets was "just a guess."

We have said before that an expert opinion that is "wholly speculative" has no probative value, *Hawkins v. OB-GYN Assocs.*, 290 Ga. App. 892, 896 (2) (b) (660 SE2d 835) (2008), and we have explained that damages cannot be established by "speculation, conjecture and guesswork." *Song v. Brown*, 255 Ga. App. 562, 564 (565 SE2d 884) (2002) (citation and punctuation omitted). But evidence that a cost cannot be fixed precisely but falls within a certain range is not necessarily speculative or "just a guess." A witness may know with certainty that the cost, in fact, falls within that range, but because of factors unknown to him or perhaps unknowable, he cannot more precisely fix the cost. "[T]he ability to estimate damages to a reasonable certainty is all that is required[,] and mere difficulty in fixing the exact amount will not be an obstacle to the award." *Page v. Braddy*, 255 Ga. App. 124, 126 (564 SE2d 538) (2002) (citation and punctuation omitted); see also *Dossie v. Sherwood*, 308 Ga. App. 185, 188 (707 SE2d 131) (2011) ("(t)he rule against the recovery of vague, speculative, or uncertain damages relates more especially to the uncertainty as to cause, rather than uncertainty as to the measure or extent of the damages.") (citation and punctuation omitted). It appears that the witness who estimated the costs of repairing the tube sheets had some basis for his estimate, and his testimony was not so uncertain, we think, as to prevent the jury from fixing the amount of damages with reasonable certainty. See *John Thurmond & Assocs. v. Kennedy*, 284 Ga. 469, 473 (2) (668 SE2d 666) (2008). Moreover, as the trial court noted, that the witness was unable to fix the cost more precisely was something that Wellons could explore on cross-examination. For all these reasons, we conclude that the trial court did not abuse its discretion when it permitted the witness to testify about the cost of replacing the failed tube sheets, even though the witness was only able to provide a range of the amount it would cost to replace them. See generally *Glen Oak v. Henderson*, 258 Ga. 455, 459 (2) (g) (369 SE2d 736) (1988) ("[A] jury can award what it pleases, within the range of the evidence").

(b) Wellons also claims that the trial court erred when it failed to exclude evidence about the cost of adding an additional boiler to the system, approximately $12 million. This evidence was presented through testimony of the same lay witness who testified about the

cost of replacing the tube sheets, and it related to a proposal submitted by the witness to Langboard in October 2008. That proposal suggested that the inadequate production of steam could be remedied by use of a stand-alone boiler, which would produce additional steam to power the existing turbine generator. The proposal itself was admitted into evidence over objection. Wellons claims on appeal that the cost of an additional boiler was irrelevant because the agreements between Wellons and Langboard did not provide for such a boiler, so that an additional boiler would put Langboard in a better position than it would have been had Wellons fully performed under the contracts.[5]

While Wellons is correct that "damages are intended to place an injured party, as nearly as possible, in the same position they would have been if the injury had never occurred[,]" it also is true that, where a breach of contract results from defective construction, an injured party may recover damages based upon "the reasonable cost of completing performance or of remedying the defects if that cost is not clearly disproportionate to the probable loss in value . . . ." *John Thurmond & Assocs.*, 284 Ga. at 469-470 (1) (citation and punctuation omitted). Here, a rational jury could have found that the design contract required the energy system to produce an amount certain of steam and that the only way to achieve that result was to install an additional boiler. Even if the cost of an additional boiler made the costs of repair disproportionate to the loss in value of the system — a finding that the evidence may permit, but does not seem to require — that certain costs are not precisely the measure of damages does not mean that evidence of those costs is irrelevant to the existence and extent of damages. We have said before that juries are to be given "wide latitude in determining the amount of damages to be awarded based upon the unique facts of each case." *Turner Broadcasting*, 303 Ga. App. at 612 (4) (citation and punctuation omitted). The court below did not abuse its discretion, we think, when it allowed Langboard to introduce evidence of the cost of the additional boiler, especially considering that it also allowed Wellons to provide evidence that the additional boiler would place Langboard in a better position than it would have been had the agreements been fully

---

[5] In its reply brief, Wellons also claims that the testimony should have been excluded because it violated the terms of the trial court's order granting Wellons's motion in limine that "prohibited the witness from offering expert opinion testimony concerning the design of the energy system, its operation or its monetary value or other such opinions or conclusions." But the witness at issue did not provide expert testimony about such matters. Instead, the witness gave lay testimony about the proposal he submitted to provide a solution to the problems that Langboard was experiencing with the energy system.

performed. We also note that, in any event, the jury did not award the full cost of an additional boiler to Langboard, so any harm in the admission of this evidence is not apparent. Compare *Morehouse College v. McGaha*, 277 Ga. App. 529, 534-535 (2) (627 SE2d 39) (2005) (verdict was so flagrantly excessive that it must have resulted from a mistake).

*Judgment affirmed. Barnes, P. J., and Adams, J., concur.*

DECIDED MARCH 27, 2012 — ▮▮▮▮▮▮▮▮

*Alston & Bird, Jeffrey J. Swart, Louis B. Park*, for appellant.
*Hall, Booth, Smith & Slover, Jack G. Slover, Jr., Thomas M. Burke, Jr., Bryan, Cave, Powell & Goldstein, C. Scott Greene, Curtis J. Romig, Matthew J. Pearce, Eric P. Schroeder, Dover, Miller, Stone & Karras, Jackson R. Langdale, Vann K. Parrott*, for appellee.