**FIRST DIVISION
BARNES, P. J.,
MCMILLIAN and REESE, JJ.**

**NOTICE: Motions for reconsideration must be** *physically received* **in our clerk's office within ten days of the date of decision to be deemed timely filed.**
**http://www.gaappeals.us/rules**

**March 8, 2019**

# In the Court of Appeals of Georgia

A18A1930. GEORGIA HIGH SCHOOL ASSOCIATION v. CHARLTON COUNTY SCHOOL DISTRICT.

McMILLIAN, Judge.

The Georgia High School Association ("GHSA") appeals the trial court's order enjoining GHSA's imposition of penalties on Charlton County School District, d/b/a Charlton County High School ("Charlton County") after the school self-reported that it had violated GHSA's 110-pitch rule in two baseball games. GHSA argues that any decision that it makes regarding high school athletic contests in Georgia are non-justiciable, that is, not reviewable by any court. Although GHSA possesses wide discretion in its treatment of member schools, GHSA is required to abide by its own Constitution and Bylaws, and that issue is reviewable, so we affirm and remand the case to the trial court for further proceedings consistent with this opinion.

GHSA is an unincorporated association of public and private high schools, which serves as the governing body for high school athletic, music, speech, and other fine arts competitions among high schools in the State of Georgia.[1] See *Parents Against Realignment v. Georgia High School Assn.*, 271 Ga. 114, 114 (516 SE2d 528) (1999). GHSA divides its member high schools into classifications based on student enrollment and then groups the schools in each classification into geographically-based regions. At the pertinent time, Charlton County was a GHSA member and paid dues to GHSA to maintain its membership in the association. GHSA assigned Charlton County to Region 2 of its "A" classification, known as "Region 2A," and member high schools in Lanier and Irwin Counties were also classified as Region 2A schools.

GHSA promulgates rules for each sport it governs, and its Constitution and By-Laws (often called, and referred to herein as, the "White Book") set out the method

---

[1] Although the trial court held an evidentiary hearing in this case, GHSA did not include a transcript of that hearing on appeal. The trial court's order sets out detailed findings of fact, and we rely on those findings, because in the absence of a transcript, we must assume they were supported by the evidence. *Borotkanics v. Humphrey*, 344 Ga. App. 875, 877 (1) n.5 (811 SE2d 523) (2018); *Collier v. D & N Trucking Co.*, 273 Ga. App. 271, 272 (614 SE2d 801) (2005).

for addressing any violation of such rules. Charlton County competes in high school baseball, among other activities, under the auspices of GHSA. One of GHSA's rules applicable to baseball prohibits a player from throwing more than 110 pitches in a two-day period, with certain exceptions not applicable here.[2] A violation of the pitch-count rule potentially subjects the offending school to a $250 fine, a two-game suspension for its head coach, and the forfeit of the game in which the violation occurred.

During two baseball games played consecutively on March 9 and 10, 2018, the official GHSA pitch count showed that one Charlton County player threw 115 pitches, violating the GHSA pitch-count restriction. At GHSA-sanctioned games, the pitch count is conducted by a GHSA-registered umpire, and although not required by GHSA rules, it is routine practice for the pitch count monitor ("PCM") to give a courtesy warning to teams and the home-plate umpire when a player is approaching the pitch-count limit, and, in fact, GHSA trains PCMs to give such warnings. However, no such warnings were given at Charlton County's March 10 game against Lanier County High School ("Lanier County"), during which the rule violation

[2] That rule establishes rest periods that must be observed between pitching sessions and provides that "[a] pitcher shall not throw more than 110 pitches . . . cumulative over a two-day period and cannot pitch more than two consecutive days."

3

occurred. The White Book authorizes the State Executive Director to interpret GHSA rules and impose the proper penalty for any rule violation , and on March 15, 2018, Charlton County self-reported the pitch count violation to Dr. Robin Hines, GHSA Executive Director. That same day, GHSA officials, including Hines and Ernie Yarbrough, GHSA Assistant Executive Director, participated in a conference call with representatives from Charlton County to discuss the matter. Following the conference call, Yarborough and Hines conferred and decided the appropriate punishment for the violation was to issue Charlton County a warning. Yarborough sent an e-mail that day to Charlton County and Lanier County announcing that a violation had occurred, "[b]ut upon further review of all the circumstances [GHSA ruled that there would] be no penalty due to the PCM not informing the Charlton Co. coach, nor the home plate umpire, that pitching to the final batter would exceed the two-day pitch count restriction" (the "March 15 decision").[3]

The White Book provides that any member that is unsatisfied with a penalty decision has seven calendar days after the decision in which to file an appeal to GHSA's State Appeal Board (the "Appeal Board"), or if the only issue under appeal

---

[3] Charlton County was also put on "warning" that the penalty would be doubled for any future violations.

4

is a request to modify the penalty imposed, the member school may appeal directly to the Executive Committee of GHSA. On appeal, the State Appeal Board or the Executive Committee then considers the evidence submitted by the party or parties in rendering its decision. No appeal of the March 15 decision was filed within the seven-day period, and Charlton County went on to finish its regular season with a 14-2 record against its Region 2A opponents. Irwin County High School ("Irwin County") also finished with a 14-2 record for the season, but because both of its losses had been against Charlton County, the latter was named the 2018 Region 2A Champion.

Subsequently, on April 18, 2018, the head coach of Irwin County sent an e-mail to a number of Irwin County school officials and GHSA employees, including Yarbrough, complaining of GHSA's March 15 decision to issue Charlton County a warning instead of a penalty and asking GHSA to award the win in the March 10 game to Lanier County. The Irwin County coach also asked GHSA to "[p]lease don't throw us under the bus with the team in question by allowing them to know that we sent this e-mail." GHSA and Irwin County continued to exchange emails about the matter over the period April 18-19, 2018 , and in one of those messages, Irwin County acknowledged that the matter had been "ruled on more than a month go" and

5

that the Irwin County coach, "as well as the other coaches in our region, knew about it before y'all did. We all just held on to it in case we needed it in a situation like we do now." Consistent with Irwin County's request, GHSA did not inform Charlton County of Irwin County's challenge to the March 15 decision before it decided the appeal.

A few days later, on April 23, 2018 at 9:01 a.m., Irwin County faxed a written appeal letter contesting the March 15 decision to Hines and the "Baseball Appeals Committee."[4] On the same day, at approximately 11:20 a.m., Hines called the Charlton County principal to inform him that an appeal had been filed, and that he, acting alone, had decided to sustain the appeal. Hines repeated this decision in a follow-up e-mail sent at 11:28 a.m., explaining that he had reviewed the appeal and decided to sustain it. As a result, he ruled that Charlton County would forfeit the March 10 game to Lanier County. In that e-mail, Hines stated that he was "disappointed that there was no appeal to the original ruling in a timely fashion since the game in question was played well over a month ago." As a result of Hines'

---

[4] The trial court found that although Irwin County had styled its appeal "Power Rating Appeal Letter," the letter was "in substance an appeal of the March 15 decision[,]" and, in fact, Irwin County's power rating decreased as a result of the appeal.

6

decision, Charlton County was stripped of the Region 2A championship, which was awarded instead to Irwin County, and Charlton County dropped below Irwin County in the rankings for the upcoming state baseball championship playoffs, affecting its seeding position for the playoffs. GHSA posted the playoff rankings on its website later that day and announced that no further appeals would be heard. The time for appealing the rankings had, in fact, expired at 12:00 noon on April 23, 2018, approximately 32 minutes after Hines provided Charlton County with his written ruling.

On April 25, 2018, Charlton County filed a "Petition for Declaratory Judgment and Injunctive Relief," asking the trial court to declare that Irwin County's appeal of the March 15 decision was void because it was decided in violation of the White Book, that Charlton County's record for the season remained 14-2, and that it was the 2018 Region 2A baseball champion. The petition also sought to enjoin GHSA from conducting the Class A public school state playoffs until the matter could be heard. Following an evidentiary hearing into the matter, the trial court issued an order on May 2, 2018, finding that GHSA had violated the White Book in considering and ruling on Irwin County's appeal and that GHSA's decision on the matter was void. As a result, the trial court:

- enjoined GHSA from granting Lanier County a forfeit victory in the March 10 game against Charlton Couinty;

- required GHSA to recognize the original outcome of the March 10 game;

- required GHSA to recognize that Charlton County finished with a 14-2 record against Region 2A opponents;

- required GHSA, after Charlton County's record had been changed to reflect a victory in the March 10 game, to determine the Region 2A champion according to its rules;

- required GHSA to recalculate the power ratings for the top eight teams in the Class A baseball playoffs; and

- required GHSA to disseminate the updated playoff bracket to affected teams.

Irwin County filed an appeal and emergency motion seeking a stay of the trial court's order, and this Court granted the motion on May 4, 2018. Consequently, GHSA was not required to reinstate Charlton County's victory in the March 10 game before the state playoffs, and the schools retained their rankings as posted on April 23, 2018.

The state playoffs and championship games were played and the season has now concluded. This appeal followed.

1. As an initial matter, we must consider whether the issues in this appeal are moot in light of the fact that the 2018 baseball season is over and state baseball championship playoffs have concluded. "[M]ootness is an issue of jurisdiction and thus must be determined before a court addresses the merits of a claim." *Shelley v. Town of Tyrone*, 302 Ga. 297, 308 (2) (806 SE2d 535) (2017). "[A] case is moot when its resolution would amount to the determination of an abstract question not arising upon existing facts or rights[.]" (Citation and punctuation omitted.) *Collins v. Lombard Corp.*, 270 Ga. 120, 122 (1) (508 SE2d 653) (1998).

GHSA contends the issues in this appeal are moot as of the completion of the 2018 baseball season, because the playoffs are over and the playoff seedings cannot be redetermined at this point. On the other hand, Charlton County asserts that issues related to its regular season record remain a live controversy and the issues presented with respect to the playoffs are capable of repetition yet evade review, and, therefore, not subject to the mootness doctrine.

We turn first to the issues related to the March 10 game and Charlton County's regular season record. Although we could locate no Georgia cases directly addressing

9

whether such issues remain ripe for judicial review after the conclusion of a playing season, our cases require us to look at the nature of the relief requested and whether the resolution would rest on existing facts or rights, rather than an abstract question. *Pimper v. State ex rel. Simpson*, 274 Ga. 624, 626 (555 SE2d 459) (2001); *Collins*, 270 Ga. at 122 (1). Here, Charlton County asserts that GHSA resolved Irwin County's appeal in violation of the White Book, which though apparently amended, remains in effect. Also, Charlton County's regular season record and the reported result from the March 10 game are retained for future reference, giving Charlton County an interest in ensuring that those records are correct. Because these matters do not present abstract questions and instead arise from the existing facts, and since this Court can conduct a meaningful review of these issues, they are not moot. See *Collins*, 270 Ga. at 122 (1). See also *Indiana High School Athletic Assn. v. Cade*, 51 NE3d 1225, 1234 (Ind. Ct. App. 2016) (athletic association's appeal from injunction allowing high schools to compete in tournament not moot because continuing interest remained in whether rules allowed for the forfeiture of school's team records, victories, or awards); *Ulliman v. Ohio High School Athletic Assn.*, 184 Ohio App. 3d 52, 60 (919 NE2d 763) (2009) (same); *Sandison v. Michigan High School Athletic Assn.*, 64 F3d 1026, 1030 (II) (A) (6th Cir. 1995) (holding that appeal of an injunction

10

preventing state high school athletic association from penalizing school with forfeited victory for competing with age-ineligible players remained a live controversy after the season concluded and the involved players had graduated).

We reach a different result with regard to Charlton County's request to recalculate the power rankings and reseed the playoff tournaments. Because the playoffs have concluded and the games cannot be replayed, there can be no meaningful review by this Court, and thus they are moot. See *Fink v. Hinson*, 243 Ga. 337, 337 (253 SE2d 757) (1979) (appeal of eligibility requirement moot where the interscholastic football program for the pertinent school year 1978-79 had ended and the students involved in the appeal were seniors whose eligibility to participate in the program expired at the same time). See also *Cole v. National Collegiate Athletic Assn.*, 120 FSupp2d 1060, 1067 (ND Ga. 2000) (issue of player eligibility moot where the football season at issue had concluded and player's competition with the football program no longer restricted).

Charlton County asserts that these issues are not moot because they are capable of repetition yet evade review. "[A] case which contains an issue that is capable of repetition yet evades review is *not* moot because a decision in such a case would be based on existing facts or rights which affect, if not the immediate parties, an existing

11

class of sufferers." (Citation and punctuation omitted; emphasis supplied.) *Collins*, 270 Ga. at 122 (1). See also *Inserection v. City of Marietta*, 278 Ga. 170, 171 (2) (598 SE2d 452) (2004). Thus, "the term 'moot' must be narrowly construed to exclude . . . those matters in which there is intrinsically insufficient time to obtain judicial relief for a claim common to an existing class of sufferers." (Citation and punctuation omitted.) *Collins*, 270 Ga. at 121-22 (1).

Here, the issues related to Charlton County's power rankings and seeding in the playoff tournaments are no longer live controversies since the games have been played, and even though the underlying issue of whether GHSA violated its rules may reoccur, it would not necessarily evade review. As demonstrated in this case, this issue will be reviewed in connection with how GHSA handled the appeal from the initial March 15 decision.

We conclude, therefore, that while any issues regarding the power rankings and seedings for the 2018 state baseball championship are moot, the issue of whether the trial court properly voided the appeal and ordered that the March 10 victory be awarded to Charlton County, resulting in a redetermination of the 2018 2A Region regular season baseball champion based on this change, as well as the issue of

12

whether the courts may intervene to consider such issues, is not moot, and we may properly consider them.

2. We now turn to GHSA's primary argument that the issues before us are not justiciable.

GHSA asserts that it is well-settled law in this State that regulation of extra-curricular activities, such as interscholastic athletic competitions, is not a subject for judicial action. GHSA is correct that our Supreme Court has warned against judicial intervention in scholastic and other school-related matters, explaining that "[c]ourts are ill-equipped to make fundamental, legislative, and administrative policy decisions which are involved in the everyday administration of a public school system[ ]" and that "[t]he Georgia Constitution . . . clearly manifests an intent to entrust the schools to the boards of education rather than the courts." (Citation, punctuation, and emphasis omitted.) *Parents Against Realignment*, 271 Ga. at 114. Instead, "[r]esolution of discretionary policy determinations best can be made by other branches of government[,]" and "[a]bsent plain necessity impelled by a deprivation of major proportion, the hand of the judicial branch must be withheld." (Citation and punctuation omitted.) Id.

13

But judicial restraint in this context does not mean that any decision related to interscholastic sports is non-justiciable. Charlton County's petition did not ask the trial court to substitute its discretion for that of GHSA regarding the penalty imposed against it; rather, the issue is whether GHSA must abide by its own Constitution and Bylaws in making such a discretionary determination. Therefore, this case is distinguishable from the cases upon which GHSA relies, none of which involve an assertion by a GHSA member that the association (or another named institution) failed to abide by its own rules and procedures in exercising its discretion. Rather, in each of those cases, the plaintiff(s) sought to overturn a discretionary decision or to obtain damages resulting from such a decision. See *Parents Against Realignment*, 271 Ga. at 114 (suit brought by parents' association contesting GHSA's decision to realign three high schools into a new region *after* the member schools were unsuccessful in overturning the decision through GHSA's appeal process); *Woodruff v. Ga. State Univ.*, 251 Ga. 232, 232-33 (304 SE2d 697) (1983) (student brought suit against the Board of Regents, the university, and certain professors asserting constitutional, tort, and contract claims after professors refused, on academic grounds, to give student a recommendation for a doctoral program); *Ga. High School Assn. v. Waddell*, 248 Ga. 542, 542 (285 SE2d 7) (1981) (parents of high school football

14

players brought suit to protest football referee's assessment of a penalty during a game *after* school was unsuccessful in obtaining relief through GHSA's protest and appeal process); *Smith v. Crim*, 240 Ga. 390, 390-91 (240 SE2d 884) (1977) (student athlete contested GHSA's determination that he was ineligible to play high school sports under its "normal semesters of years of enrollment" rule on constitutional grounds).

Because we have found no Georgia cases directly considering the nature of the relationship between voluntary associations like GHSA and its dues-paying members,[5] we begin our analysis by examining the association's legal structure. GHSA is an unincorporated association with over 400 member high schools, which serves as the governing body for interscholastic competitions among those schools. Charlton County is a GHSA member and pays dues for the right to participate in GHSA-sanctioned sports and activities. The White Book, containing the GHSA's Constitution and Bylaws, is the governing document for GHSA , and consequently, it also governs the relationship between GHSA and its members.

---

[5] We note, however, that OCGA § 9-2-25 (a) expressly grants a voluntary association like GHSA the capacity to sue and be sued. Prior to the passage of this statute in 1959, Ga. L. 1959, p. 44, §§ 2-5, the Georgia Supreme Court had held that voluntary associations lacked such capacity. See *Howard v. Betts*, 190 Ga. 530, 530 (2) (9 SE2d 742) (1940).

15

Under this arrangement, the White Book is in the nature of an implied contract[6] between GHSA and its members, under which the parties agree to operate in accordance with the procedures outlined in the White Book, and this agreement is supported by consideration in the form of member dues. See OCGA § 13-3-1.[7] We find, therefore, that the provisions of the White Book should be construed according to principles of Georgia contract law. Cf. *Rigby v. Boatright*, 294 Ga. 253, 256 (751 SE2d 851) (2013) (bylaws of electric membership corporation, which is in essence a nonproft public service cooperative,[8] construed according to contract principles). Accordingly, we analyze this case as one to enforce an implied contract and conclude that the general principles of judicial restraint cited by GHSA do not preclude our review because Charlton County is seeking to require that GHSA abide by its

---

[6] Because the record in this case contains only a portion of the White Book, it is possible other portions of that document contain terms creating an express contract.

[7] OCGA § 13-3-1 provides: "To constitute a valid contract, there must be parties able to contract, a consideration moving to the contract, the assent of the parties to the terms of the contract, and a subject matter upon which the contract can operate."

[8] See *Rigby v. Boatright*, 330 Ga. App. 181, 182 (767 SE2d 783) (2014).

16

Constitution and Bylaws in its treatment of Irwin County's appeal – and not simply objecting to the merits of the decision. [9]

This conclusion is supported by our prior decisions in cases involving the somewhat analogous situation of church governance. It is well settled that constitutional principles of separation of church and state normally "prevent[ ] courts from deciding questions involving a church's internal affairs in matters of theology, church discipline, or church governance." *Smith v. Mount Salem Missionary Baptist Church*, 289 Ga. App. 578, 579 (1) (657 SE2d 642) (2008). However, in limited situations, courts can intervene such as when a case involves a civil matter like a a property dispute. Id. at 579 (1). In *Smith*, a dispute arose over the dismissal of the church's pastor, and the church's board of deacons filed suit to enjoin the pastor from exercising control over church property and to obtain a ruling from the trial court "requiring that a vote on whether to retain or discharge [the] pastor be limited to votes by those persons who were admitted to membership in the Church according to the Church bylaws." Id. at 578. The trial granted the relief sought by the deacons, and the pastor appealed, asserting that strict enforcement of the church bylaws failed to take

---

[9] So, for example, if GHSA had initially required Charlton County to forfeit the March 10 game as a penalty, that decision likely would be non-justiciable.

into account a church tradition that persons are also accepted as new church members through a more informal, traditional method not set out in the bylaws, although he offered no evidence supporting this contention. Id. at 579 (1). The pastor argued, based on this alleged tradition, that the trial court's order determining which members could vote on his dismissal impermissibly strayed into ecclesiastical matters. Id. After acknowledging the constitutional restraints imposed on courts in addressing such matters, this Court found that the trial court's ruling was not an "order [impermissibly] deciding the criteria for Church membership or controlling a matter of Church governance, but merely an order requiring that the Church bylaws setting forth the procedure for obtaining membership be followed." Id. at 579-80 (1). See also *Waverly Hall Baptist Church v. Branham*, 276 Ga. App. 818, 826 (3) (625 SE2d 23) (2005) ("It is not beyond judicial purview to look at church documents to ascertain whether members were duly elected.") (punctuation omitted). We see no reason to reach a different result in a case involving GHSA and high school athletics.

3. Turning now to the merits of the trial court's ruling, we look to the provisions of the parties' contract (i.e., the White Book) where, as here, its terms are clear and unambiguous. *Eagle Jets, LLC v. Atlanta Jet, Inc.*, 347 Ga. App. 567, 572 (2) (820 SE2d 197) (2018). It is undisputed that GHSA did not follow the appeal

18

procedures set out in the White Book, which require that appeals of penalty decisions be made within seven days and that such appeals be considered by the GHSA Appeal Board or the Executive Committee and that the parties involved be allowed to present evidence in the matter. Irwin County did not raise any complaint about the the March 15 decision until April 18, thirty-four days later, in an e-mail to Hines, the Executive Director, and others, even though Irwin County acknowledged that it was aware of that ruling around the time it was made, and Irwin County did not file its formal written appeal to the Appeal Board until April 23, thirty-nine days after the decision. Nevertheless, Hines considered Irwin County's appeal, despite acknowledging its untimeliness in his written decision, and he decided the matter individually and apparently without notice to the Appeals Board as required by the White Book. Moreover, Hines did not forward Irwin County's April 18 complaint to Charlton County even though the White Book requires that the involved schools be given notice of any appeal. Given the timing of the impending state championship playoffs, Charlton was left with just thirty-two minutes to respond to Hines' ruling, in effect, giving the school no practical recourse under the White Book's procedures.[10]

_____

[10] At oral argument, counsel for GHSA asserted that GHSA provided Charlton County with sufficient due process by allowing it thirty-two minutes to appeal after Hines' ruling. We need not consider this issue, however, because Charlton County

19

Despite this series of events, GHSA argues that no violation occurred, raising for the first time in its supplemental appellate brief following oral argument that the White Book granted Hines the discretion to rule on the appeal. In support of this argument, GHSA cites a provision of the White Book providing, "The State Executive Director shall make all arrangements for holding and conducting State Meets and Tournaments." GHSA asserts that this provision gives the Executive Director broad discretion and asserts that because this language is a more specific provision of the White Book than the appellate procedures, it should control. Pretermitting whether this language can be construed as more specific than the appellate procedures or whether it even relates to the issues remaining in this case regarding Charlton County's win-loss record and the regional championship, GHSA has failed to establish that it ever raised this issue before the trial court. It certainly does not appear in any of GHSA's written filings, and GHSA failed to submit a transcript of the hearing in this matter.

---

has conceded that it has not asserted any state or federal constitutional claims. But see *Brentwood Academy v. Tennessee Secondary School Athletic Assn.*, 531 U.S. 288 (121 SCt 924, 148 LE2d 807) (2001) (enforcement of rule by state high school association constitutes state action).

It is well settled that issues presented for the first time on appeal furnish nothing for us to review, for this is a court for correction of errors of law committed by the trial court where proper exception is taken. Nor may [an appellant] alter the course of its arguments mid-stream, raising issues on appeal that were not raised before the trial court.

(Citation omitted.) *American Academy of Gen. Physicians, Inc. v. LaPlante*, 340 Ga. App. 527, 529 (1) (798 SE2d 64) (2017).

Accordingly, because GHSA breached its own appeal procedures when it allowed Irwin County to file an untimely appeal without sufficient time for Charlton County to respond and failed to submit the appeal to the Appeal Board for presentation of evidence, as required in the White Book, we affirm that portion of the trial court's order voiding Irwin County's appeal and directing GHSA to award the victory in the March 10 game against Lanier County to Charlton County and after that change is made to Charlton County's record, to determine the Region 2A baseball championship according to its rules and remand this case for further proceedings not inconsistent with this opinion.

*Judgment affirmed and case remanded. Barnes, P. J., and Reese, J., concur.*