**FIFTH DIVISION**
**RICKMAN, P. J.,**
**HODGES and PIPKIN, JJ.**

**NOTICE: Motions for reconsideration must be _physically received_ in our clerk's office within ten days of the date of decision to be deemed timely filed.**
**https://www.gaappeals.us/rules**

**February 26, 2026**

# In the Court of Appeals of Georgia

A25A1730, A25A1828. RICHARDSON et al. v. HOHMANN et al.; and vice versa.

RICKMAN, Presiding Judge.

Shay Richardson paid disputed life insurance proceeds into the firm trust account of her attorney, C. David Joyner, and subsequently discovered that he transferred some of the money to Joann B. Hohmann and Thomas C. Hohmann, Jr. (collectively "the Hohmanns"). Richardson and her daughters, Elizabeth Ayers Hunter and Sibyl Ellen Hunter (collectively "Richardson") filed suit against the Hohmanns for conversion, trover, money had and received, constructive trust and disgorgement of funds, seeking injunctive relief, attorney fees, and punitive damages.[1]

---

[1] Richardson also filed suit against C. David Joyner, P. C., Hillary B. Cranford, as administrator of the estate of Charles David Joyner, Cassandra Joyner, and Stanley

The Hohmanns filed a motion for summary judgment, which the trial court granted following a hearing. Richardson filed a notice of appeal from that order and that appeal was ultimately docketed in this Court as Case No. A25A1730. The Hohmanns moved to dismiss the appeal, contending that the transcript from the summary judgment hearing had not been properly filed. The trial court denied the Hohmanns' motion to dismiss, and the Hohmanns filed a notice of appeal from that order; that appeal was docketed in this Court as Case No. A25A1828. We have consolidated these appeals for review, and, as more fully set forth below, we now reverse in Case No. A25A1730 and affirm in Case No. A25A1828.

### Case No. A25A1730

We turn first to the grant of summary judgment on Richardson's claims against the Hohmanns. "Summary judgment is proper when there is no genuine issue of material fact and the movant is entitled to judgment as a matter of law. OCGA § 9–11–56 (c). We review a grant or denial of summary judgment de novo and construe the evidence in the light most favorable to the nonmovant." *Haugabook v. Crisler*, 297 Ga. App. 428, 428 (677 SE2d 355) (2009).

---

J. Williams. These additional defendants, however, are not parties to this appeal.

So construed, in January 2022, the Hohmanns loaned Joyner $1,200,000. Joyner promised to re-pay the loan, with accrued interest, on or before April 15, 2022. As per Joyner's instructions, the Hohmanns deposited the loan proceeds into Joyner's firm's Interest on Lawyer Trust Account ("IOLTA").[2] Also in January 2022, Shay Richardson's ex-husband passed away. Shortly after her ex-husband died, Shay Richardson retained Joyner to represent her regarding a disputed trust in her ex-husband's name.[3] The trust held many assets, including a $2,000,000 life insurance policy for the benefit of Shay's and the decedent's daughters. Joyner recommended that Richardson deposit the disputed monies into his firm's IOLTA account until the dispute was resolved.

On March 7, 2022, Richardson wired $2,014,226.16 into the trust account. On April 18, 2022, Joyner repaid the loan to the Hohmanns, including interest, in the amount of $1,235,000. Bank records from the trust account make it clear that the

[2] Pursuant to the Georgia Rules of Professional Conduct ("GRPC"), all funds held by an attorney for a client are to be deposited in an IOLTA; except in limited, specified circumstances, lawyers are prohibited from depositing personal funds in this account. See GRPC 1.15(II)(a),(b), contained in Georgia Bar Rule 4-102(d). The Hohmanns submitted individual affidavits averring they were unaware of the nature of the account into which they deposited the loaned money.

[3] Pursuant to their fee agreement, Richardson paid Joyner a $3000 retainer.

payment to the Hohmanns came from the same trust account where Richardson's money was deposited and that the money the Hohmanns had deposited into the account had been expended prior to the time they were paid. Joyner overpaid interest by $22,507 and the Hohmanns wired that amount back to him.

After Joyner died in January 2023, Shay Richardson began investigating the status of the over $2,000,000 in insurance proceeds purportedly held in the IOLTA. After discovering that the money was no longer in the account, Richardson filed suit against, among others, the Hohmanns for conversion, trover, money had and received, constructive trust and disgorgement of funds, and sought injunctive relief, attorney fees, and punitive damages. The Hohmanns filed a motion for summary judgment arguing that Richardson had no valid claims against them. Richardson opposed the motion and argued, among other things, that at a minimum the motion was premature because discovery was on-going.

Following a hearing, the trial court granted the Hohmann's motion for summary judgment without elaboration. However, at the hearing, the trial court explained that this case "it is unfortunate, and justice needs to be done. But I am not going to do justice by doing an injustice to the Hohmanns. That is not going to

happen. I do not - - I am so sorry for the people who have suffered, but it was not at the hands of the Hohmanns."

1. Richardson contends that the trial court erred by granting summary judgment on her claim for money had and money received.

When reviewing a claim for money had and received we are mindful that,

> [a]n action for money had and received is founded upon the equitable principle that no one ought unjustly to enrich himself at the expense of another, and is maintainable in all cases where one has received money under such circumstances that in equity and good conscience he ought not to retain it, and ex aequo et bono it belongs to another.

*Haugabook,* 297 Ga. App. at 431 (punctuation omitted). "The phrase 'ex aequo et bono' means 'in justice and fairness.'" Id. "In order to maintain an action for money had and received it is necessary to establish that defendants have received money belonging to the plaintiff *or* to which he is in equity and good conscience entitled." Id. at 432 (punctuation omitted; emphasis in original). "Furthermore, it is immaterial how the money may have come into the defendant's hands, and the fact that it was received from a third person will not affect his liability, if, in equity and good

conscience, he is not entitled to hold it against the true owner." Id. (punctuation omitted).

The record here shows[4] that Richardson retained Joyner to perform legal services related to her role as trustee for a trust account her ex-husband had created for the benefit of their children, and that Joyner thereafter suggested that she deposit over $2,000,000 of life insurance proceeds into his IOLTA account. At no time did Shay Richardson have any inkling that Joyner was in financial distress, or that she was putting her children's insurance proceeds at risk by placing the funds in Joyner's firm's trust account because he might use it to repay his personal debts. Further, it was not until Joyner died that she discovered he never performed the legal services he was retained to perform.

---

[4] The Hohmanns' appellate brief in Case No. A25A1750 is almost completely devoid of citations to the record on appeal, including any citation to the summary judgment transcript from which they quote extensively, arguing that these "statements in place" of their attorney at the hearing should stand on the same footing as evidence. The fact that the Hohmanns seek to interject evidence into this case based on their attorney's ascertainment of the facts gives credence to Richardson's assertion that the Hohmanns's motion for summary judgment was premature and the proceedings should have been continued to allow for the completion of discovery. Given that this case requires weighing of the equities, a completely developed record seems to us to be particularly important.

As to the Hohmanns, according to their affidavits and their attorney's statement at the motion for summary judgment hearing, which they say we should treat like evidence, they knew that Joyner was under some sort of severe financial duress when they loaned him money.[5] Their loan was "backed up" by warranty deeds on three properties owned by Joyner's limited liability company, which the Hohmanns had been instructed to record in the event the loan was not repaid. In an effort to support the grant of summary judgment in their favor, the Hohmanns now suggest that because they were repaid from the IOLTA account and thus did not need to file the deeds to repay the loan, Richardson can use the properties as a means to recoup some of the insurance money from the IOLTA that was used to repay the Hohmanns. They also point to the fact that they had another outstanding smaller loan that they could have attempted to recover, which would have depleted the available funds even more. Further, after a lengthy, somewhat contorted, analysis of *Haugabook*, they say the significance of that case here is that "had Mr. Joyner not repaid the Loaned Funds to the Hohmanns, the Hohmanns could have had a claim for money had and received

---

[5] A the hearing the Hohmanns' attorney described Joyner being in a "state of panic" or a "depressed state" and stated that Joyner told the Hohmanns that he had "failed everything."

from any party who obtained funds from the P.C. Account when, in equity and good conscience, such party should not be allowed to retain those funds." While they cite these considerations as justification for the trial court's grant of summary judgment in their favor, it would seem to us that these considerations, assuming they pertain to the equities between the parties, must be weighed against their debt being paid from funds deposited by a client in an IOLTA of a lawyer who has been retained to perform legal services for that client, who did not know they were basically making a loan to the lawyer to pay his personal debts and, unlike the Hohmanns, were given no deeds they could simply record to become of owners of property so as to partially recoup their loss.[6] As far as we can tell from the trial court's statements at the motion for summary judgment hearing, in granting summary judgment for the Hohmanns, the trial court seemed to go under the theory that since neither party was at fault or did anything wrong, whoever had the money last in their hands should be able to retain it. However,

---

[6] Beyond some facial factual similarities in that it involved a lawyer, his clients, and someone who had loaned the lawyer money, we doubt that the analysis in *Haugabook* is of much relevance here in light of the obvious factual dissimilarities – the clients in that case were lied to by the lawyer who told them he had settled their case and they were owed $1,000,000, when in fact suit had not yet been filed; therefore, there had been no recovery, meaning they had suffered no prejudice on account of not recovering money they were not actually owed. 297 Ga. App. at 434.

given the facts here, and particularly given that the facts had not been fully developed at the time summary judgment was granted, we believe the equities between the parties should be weighed by a trier of fact. See *Gulf Life Ins. Co. v. Folsom*, 265 Ga. 400, 405 (349 SE2d 368) (1986) (recognizing that in action for money had and received, it is generally for the jury to weigh the equities between the parties). Accordingly, the trial court's grant of summary judgment must be reversed.

2. Richardson contends that the trial court erred by granting summary judgment on her remaining claims.

(a) "To make out a prima facie case, in an action for damages for conversion of personal property, the plaintiff must show title to the property, possession by the defendant, demand for possession, and refusal to surrender the property, or an actual conversion prior to the filing of the suit." *Taylor v. Powertel*, 250 Ga. App. 356, 358 (2) (551 SE2d 765) (2001). "Any distinct act of dominion and control wrongfully asserted over another's personal property, in denial of his right or inconsistent with his right, is a conversion of such property." Id. "While money constitutes personal property, money is intangible personalty that is fungible, because it belongs to a class of property which cannot be differentiated by specific identification unless there has been created

a specific fund that has been set aside from other money." Id. at 359(2). Accordingly, generally, "money is not subject to a civil action for conversion." Id.

There is an exception, however, when, like in this case, the money comes from a specific, separate account. See *United Services v. Home Ins. Co.*, 218 Ga. App. 85, 89 (3)(c) (460 SE2d 545) (1995) ("[M]oney can be the subject of a conversion claim as long as the allegedly converted money is specific and identifiable"). Here, the money sent to the Hohmanns was from a specific, identifiable account. Accordingly, construing the facts in favor of Richardson, issues of material fact exist as to Richardson's claim for conversion. Accordingly, the trial court erred by granting summary judgment on this claim. See *Guise v. Leoni*, 366 Ga. App. 659, 667(d) (883 SE2d 892) (2023).

(b) "In order to recover in a trover case it is essential that the plaintiff show either title or right of possession, and in some cases it is necessary to establish both. Although title is presumed to follow possession of the property such presumption is rebuttable." *Hinkle v. Hinkle*, 167 Ga. App. 423, 424 (306 SE2d 705) (1983) (punctuation omitted). Here, as detailed above, there is an issue of material fact as to whether Richardson can show right of possession of the money transferred to the

Hohmanns. Accordingly, the trial court erred by granting summary judgment to the Hohmanns on Richardson's claim for trover. See id.

(c) The trial court granted summary judgment to the Hohmanns on Richardson's remaining claims for punitive damages, attorney fees, constructive trust and disgorgement of funds, and injunctive relief because it granted summary judgment as to Richardson's underlying claims. Because we have reversed the grant of summary judgment on Richardson's underlying claims, we also reverse the trial court's grant of summary judgment on Richardson's remaining claims. See *North Atlanta Golf Operations v. Ward*, 363 Ga. App. 259, 267-68(4) (870 SE2d 814) (2022).

*Case No. A25A1828*

3. The Hohmanns contend that the trial court erred by failing to grant their motion to dismiss Richardson's appeal.

Pertinent to this issue, the record shows that Richardson filed a notice of appeal from the trial court's order granting summary judgment on December 13, 2024, and amended the notice on December 20, 2024. On December 23, 2024, Richardson filed a "Notice of Filing Transcript" and attached the transcript of the summary judgment hearing held on November 7, 2024; this transcript was certified by both the court

11

reporter and the transcriptionist. The trial court clerk issued an invoice for the trial court costs on December 23, 2024, and later confirmed that the transcript was included in the bill of costs.

Richardson paid the bill of costs on January 15, 2025. On that same day, the trial court clerk made an online docket entry indicating "Appeal Fee Paid" but noted that the clerk was "WAITING FOR TRANSCRIPT." The Hohmanns' counsel sent an e-mail, copied to Richardson's counsel, to the trial court's staff attorney, noting that Richardson had filed a copy of the hearing transcript on December 23, 2024, and inquiring whether there were any issues with the transcript or if another transcript needed to be filed by the court reporter. The staff attorney responded with a suggestion that counsel contact the trial court's clerk, and the Hohmanns' counsel forwarded his question to the clerk but did not copy Richardson's counsel on this e-mail. The trial court clerk responded to the Hohmanns' counsel, "The transcripts were not filed by the court reporter. They were filed as exhibits by an attorney. Please have the court reporter file the original transcripts with our office."

Neither the Hohmanns' counsel nor the trial court clerk communicated directly with Richardson's counsel about the transcript; instead, on February 3, 2025, the

Hohmanns filed a motion to dismiss the appeal, arguing that Richardson failed to timely[7] file the *original* transcript with the trial court clerk and the delay in requesting the original transcript from the court reporter was unreasonable and inexcusable. The trial court held a hearing on the motion to dismiss and later issued a detailed order concluding that the transcript filed by Richardson, which contained certificates of accuracy executed by both the court reporter and the transcriptionist, was an original transcript within the meaning of the Appellate Practice Act.

On appeal,[8] the Hohmanns do not appear to directly challenge the trial court's ruling that the transcript filed by Richardson was an original transcript; instead, citing OCGA § 5-6-41 (e), they now argue that the court reporter, not Richardson, was required to file the original transcript with the trial court clerk. Because this issue was not raised by the Hohmanns in their motion or at the hearing on the motion, the trial court did not rule on it. Indeed, in its conclusions of law, the trial court specifically

---

[7] Generally, the transcript, if requested, must be filed within 30 days of the filing of the notice of appeal. OCGA § 5-6-42.

[8] We note that, once again, the Hohmanns' brief on appeal is bereft of citations to the record and the transcript of the hearing on their motion to dismiss. However, in this appeal they are the appellant, and thus their citation failure is even more problematic. We reiterate that if we have missed something pertinent to this appeal, the responsibility lies with them.

noted that "[t]he sole basis for [the Hohmanns'] Motion is that the transcript filed by [Richardson] which [the Hohmanns] concede is a true and correct transcript of the [summary judgment] hearing is not the 'original transcript' required by the Appellate Practice Act[.]"

> As [an] appellate court[], we are [a] court[] for the correction of errors of law made by the trial court. In appellate practice, an error of law is a false or mistaken conception or application of the law. . . .An error of law has as its basis a specific ruling made by the trial court.

*In re Declaration of Judicial Emergency*, 358 Ga. App. 48, 53 (1) (853 SE2d 366) (2020). Thus,

> [i]t is well settled that issues presented for the first time on appeal furnish nothing for us to review, for this court is a court for correction of errors of law committed by the trial court where proper exception is taken. Nor may an appellant alter the course of its arguments midstream, raising issues on appeal that were not raised before the trial court.

*Georgia High School Ass'n v. Charlton County School Dist.* 349 Ga. App. 309, 319(3) (826 SE2d 172) (2019) (punctuation omitted). See also *City of Gainesville v. Dodd*, 275 Ga. 834, 837 (573 SE2d 369) (2002) ("An appellate court is, among other things, a court for correction of error of law. An error of law has as its basis a specific ruling

made by the trial court.") (punctuation omitted); *Kolb v. Daruda*, 350 Ga. App. 642, 645(1) (829 SE2d 881) (2019) ("[I]ssues presented for the first time on appeal furnish nothing for us to review[.]") (punctuation omitted). And these principles have been specifically applied in the context of a motion to dismiss based on the failure to timely file a transcript. See *Barmore v. Himebaugh*, 205 Ga. App. 381, 383(3) (422 SE2d 255) (1992) ("Since appellee's failure to pay court costs was not a ground of appellants' motion to dismiss and was not ruled on by the trial court, that issue is improperly presented.") Accordingly, the trial court's order denying the motion to dismiss the appeal is affirmed.

*Judgment reversed in Case No. A25A1730. Judgment affirmed in Case No. A25A1828. Hodges and Pipkin, JJ., concur.*